31 P.3d 677 (2001)
144 Wash.2d 807
In re the RECALL OF Evan KAST, Commissioner Pierce County Fire Prevention District No. 23.
No. 70899-1.
Supreme Court of Washington, En Banc.
Considered September 6, 2001.
Decided September 20, 2001.
*678 John W. Schedler, Snohomish, for Petitioner.
*679 Adams & Adams, Barton Louis Adams, Gerald Horne, Pierce County Prosecutor, Roger J. Miener, Deputy, Tacoma, for Respondent.
PER CURIAM.
Commissioner John Chappell of the Pierce County Fire Prevention District No. 23 filed a petition to recall his fellow board member, Commissioner Evan Kast. First, Commissioner Chappell asserted that Commissioner Kast sought to avoid the competitive bidding process required by RCW 52.14.110 by unlawfully splitting a culvert ditch project into two separate jobs. Second, Chappell asserted that Kast unlawfully ejected a citizen from a public meeting in violation of the Open Public Meetings Act of 1971, chapter 42.30 RCW (the Open Public Meetings Act). The Pierce County Superior Court dismissed the first charge relating to the state competitive bidding requirements on grounds that the charge was legally insufficient. However, the court concluded that the second charge relating to the Open Public Meetings Act was sufficient to allow the recall process to proceed. We find that the first charge that Kast violated state competitive bidding law was factually and legally sufficient; however, we also find that the second charge that Kast violated the Open Public Meetings Act was not legally sufficient. Therefore, we reverse the trial court's decision on both charges and conclude that the recall process may proceed with regard to the first charge.

FACTS
On October 10, 2000, Chappell filed a recall petition against Commissioner Kast charging that Kast sought to avoid state competitive bidding law and that he violated the Open Public Meetings Act. The petition also contained two other charges in which Chappell alleged that Kast had sought to avoid state competitive bidding law by improperly declaring the existence of an emergency situation. The trial court concluded that these last two charges were not legally sufficient, and Chappell has not raised the issue of their sufficiency in this appeal.
With regard to the first charge, Chappell explained that in early 1998 the fire district was considering a drainage problem, which was occurring at the Ashford Fire Hall. In April 1998, the fire district requested a bid from a local contractor to assess the cost of fixing the drainage problem. The contractor returned a bid for $11,000 to dig a trench around the fire hall and to install a drainage culvert in the ditch.
Later that summer, the fire district approved a plan to divide the culvert ditch project into two componentslabor and materials. Kast allegedly made a motion to have the project so divided. Chappell voted against the motion; however, Commissioners Kast and Rick Adams voted in favor of the motion and the project went forward as two separate jobs. Kast also moved to hire Jerry Iverson Trucking to complete labor up to $2,500 on the project, and Lynch Creek Quarry was retained to provide the necessary materials. When the project was completed in August 1998, the fire district issued two checks in relation to the projectone to Jerry Iverson Trucking for $2,480.15 and one to Lynch Creek Quarry for $1,621.88.
Chappell asserts that Kast stated that he knew that the project exceeded the $2,500 threshold and that the district would not be able to avoid the competitive bidding requirements of RCW 52.14.110. Similarly, Chappell maintains that Kast stated that he knew that he was breaking the law.
In a subsequent audit of the fire district, the state auditor concluded that the district officials were familiar with the competitive bidding law and that the district had failed to follow the law with regard to the culvert ditch project. The auditor also noted that the district's actions had denied all local vendors an equal opportunity to bid on the project. Finally, the auditor concluded that the district's actions had not necessarily ensured that the district received the best quality and price for the project.
The trial court concluded that this first charge was legally insufficient, and Chappel has challenged the validity of the trial court's decision in this appeal.
With regard to the second charge, Chappell asserted that Kast unilaterally expelled a citizen from a public meeting on July 10, *680 2000 without legal justification. According to Chappell, the members of the fire district board were discussing the installation of a security system for the fire district. At some point, Luke Osterhouse asked whether the fire system would protect the fire district from the real thieves who had already stolen documents from the fire district. Next, Kast allegedly ordered Osterhouse to be removed from the meeting, and the sheriff was called in to remove Osterhouse. Chappell maintains that Kast had previously claimed to have knowledge of the requirements of the Open Public Meetings Act and that Kast thus acted with knowledge that his actions were in violation of that law.
On the other hand, Kast maintains that Osterhouse was removed from the meeting for good cause and that the fire district board had ordered the removal. A board of three commissioners runs the fire district, and the third member of this board is Commissioner Peggy VanSteertegem. Commissioner VanSteertegem explained that Kast called for public comments to be held until the end of the board's discussion and that Osterhouse's comment was out of order. Both Kast and Fire Chief John Gregory stated that Osterhouse's comment was threatening and that Osterhouse had approached them in a threatening manner. Moreover, Fire Chief Gregory stated that he thought that a fight was going to break out when Osterhouse began to approach him. Finally, VanSteertegem noted that she had previously witnessed an incident in which Osterhouse had threatened Kast and that she believed that Osterhouse was once again threatening Kast. When the sheriff arrived at the meeting, the board voted two to one (Chappell dissenting) to have Osterhouse removed on grounds that his continued presence would cause further disruption to the meeting.
The trial court, while refraining from concluding that Chappell's allegations were true, determined that the second charge was legally and factually sufficient to justify the continuation of the recall process against Kast. Kast sought review in this court regarding the legal sufficiency of the second charge.

ANALYSIS
The Washington State Constitution provides that the citizens of this state may seek the removal of a public official from her duly elected office before her term expires through a recall election. CONST. art. I, §§ 33-34; In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 764, 10 P.3d 1034 (2000). The process for initiating a recall election is detailed in chapter 29.82 RCW, and RCW 29.82.010 further defines the causes for which a public official may be recalled from public office.[1] We have previously recognized that the state legislature has limited the recall process so that public officials will be protected from petitions based on frivolous or unsubstantiated charges. Chandler v. Otto, 103 Wash.2d 268, 274, 693 P.2d 71 (1984). Although the courts serve a gateway function in the recall process, we do not attempt to evaluate the truthfulness of the charges in a petition. In re Recall of Beasley, 128 Wash.2d 419, 427, 908 P.2d 878 (1996). Rather, the court's function is limited to evaluating the legal and factual sufficiency of the charges. Pearsall-Stipek, 141 Wash.2d at 764, 10 P.3d 1034. Finally, when we review a trial court's decision, this court will apply "the same reviewing criteria as the superior court." Id.

State Competitive Bidding Law Violation
Chappell requests that this court conclude that the first charge of his recall petition is legally and factually sufficient.
1. Factual Sufficiency
We have previously specified the substantive standards for establishing factual sufficiency:

*681 Factually sufficient means the petition must comply with the specificity requirements of RCW 29.82.010. As noted in Herron [v. McClanahan, 28 Wash.App. 552, 625 P.2d 707 (1981)] at 560 [625 P.2d 707], `these statutory requirements ensure that both the public electorate and the challenged elective official will make informed decisions in the recall process.' Factually sufficient indicates that although the charges may contain some conclusions, taken as a whole they do state sufficient facts to identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.
Chandler, 103 Wash.2d at 274, 693 P.2d 71. In addition, when a petition charges that the elected official has violated the law, the petitioners must show that they "at least have knowledge of facts which indicate an intent to commit an unlawful act." In re Recall of Wade, 115 Wash.2d 544, 549, 799 P.2d 1179 (1990).
Kast suggests that the first charge is not factually sufficient because the charge does not specify the date upon which he allegedly made a motion and voted to unlawfully split the culvert ditch project into two separate jobs. RCW 29.82.010 requires that "[t]he charge shall state the act or acts complained of in concise language, give a detailed description including the approximate date, location, and nature of each act complained of." However, the recall statutes are to be construed in favor of the voter. Pearsall-Stipek, 141 Wash.2d at 765, 10 P.3d 1034. Thus, we agree that a petition should not fail for a mere technical violation of RCW 29.82.010 if the electorate has sufficient information to evaluate the charge and the elected official has sufficient notice to respond to the charge. See Skidmore v. Fuller, 59 Wash.2d 818, 823-24, 370 P.2d 975 (1962) (holding that a charge in a recall petition was factually sufficient even though it failed to state the exact date upon which the allegedly unlawful agreement was entered into). Moreover, we may look to supporting affidavits to determine whether a petition is factually sufficient. Beasley, 128 Wash.2d at 427, 908 P.2d 878. Because the approximate date (summer 1998) was provided in the supporting affidavits, we conclude that the first charge does not fail based on a technical violation of RCW 29.82.010.
We conclude that the first charge is factually sufficient because the petition provides sufficient information regarding the nature of the charge to both the electorate of the fire district and to Kast. RCW 52.14.110 provides that fire districts shall use a competitive sealed bid process, whenever practicable, to purchase materials or to contract for labor that will cost more than $2,500. Chappell has alleged that Kast made a motion and voted to unlawfully divide a project into two parts and thus create two jobs that would cost less than $2,500. Furthermore, Chappell has explained that Kast completed his breach of state competitive bidding laws by hiring Jerry Iverson Trucking to complete the labor on the culvert ditch project. In his report, the state auditor confirmed that this division of the project was unlawful and that the board members, including Kast, were aware of the state competitive bidding law. Finally, Chappell has also offered evidence regarding Kast's intent to violate the law: Kast made statements that he knew that the project exceeded the $2,500 threshold and that he knew that he was breaking the law. Based on these assertions, we conclude that the first charge is factually sufficient.
2. Legal Sufficiency
This court has also specified the substantive standards for establishing legal sufficiency:
Legally sufficient means that an elected official cannot be recalled for appropriately exercising the discretion granted him or her by law. To be legally sufficient, the petition must state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.
Chandler, 103 Wash.2d at 274, 693 P.2d 71 (citations omitted). However, we have also recognized that a charge is legally insufficient if the conduct is insubstantial or if the elected official acted with a legal justification. *682 Greco v. Parsons, 105 Wash.2d 669, 671-72, 717 P.2d 1368 (1986).
We conclude that the first charge is legally sufficient. Kast suggests that making a motion is insubstantial conduct that cannot be the basis of recall. See In re Recall of Call, 109 Wash.2d 954, 958, 749 P.2d 674 (1988). However, although a motion by itself may be considered insubstantial conduct, Kast also voted to adopt that motion and to hire a contractor in violation of the state competitive bidding law. His actions were substantial.
Kast also asserts that a violation of RCW 52.14.110 "does not result in a civil fine or a criminal penalty and is not, therefore, `malfeasance' as that term is defined in RCW 29.82.010(1)(b)." In re Recall of Hurley, 120 Wash.2d 378, 381, 841 P.2d 756 (1992). Nevertheless, his conduct would still be considered malfeasance under section (1) because his violation of the law was "wrongful conduct" and because his conduct "interfere[d] with the performance of official duty" by failing to promote the best interests of the fire district. RCW 29.82.010(1). As a result of his conduct, the fire district could not be sure that it had received the best value or price for the culvert ditch project.[2]
Finally, Kast concludes that whether a competitive sealed bid will be used in relation to a construction project is a matter within the discretion of the board. He notes that RCW 52.14.110 requires the competitive bid process to be used "[i]nsofar as practicable." However, Kast has not offered any evidence that the use of competitive sealed bids was not practicable in the case of the culvert ditch project. Chappell concedes that the fire district might have avoided the competitive bid requirement if the board had declared an emergency in relation to the culvert ditch project. Nevertheless, no such emergency was declared, and the record does not support the conclusion that such an emergency existed. Because the fire district, and Kast specifically, did not exercise its discretion in a reasonable manner, we conclude that the first charge is legally sufficient.

Violation of Open Public Meetings Act
Kast requests that this court conclude that the second charge of this recall petition is legally insufficient.
1. Factual Sufficiency
We conclude that the second charge in this case is factually sufficient. Although the parties dispute whether the board or only Kast ordered the removal of Osterhouse, no one disputes that Osterhouse was ordered to be removed and that the sheriff was called in to remove him. RCW 42.30.050 describes the procedure for dealing with interruptions that occur during a public meeting:
In the event that any meeting is interrupted by a group or groups of persons so as to render the orderly conduct of such meeting unfeasible and order cannot be restored by the removal of individuals who are interrupting the meeting, the members of the governing body conducting the meeting may order the meeting room cleared and continue in session or may adjourn the meeting and reconvene at another location selected by majority vote of the members. In such a session, final disposition may be taken only on matters appearing on the agenda. Representatives of the press or other news media, except those participating in the disturbance, shall be allowed to attend any session held pursuant to this section. Nothing in this section *683 shall prohibit the governing body from establishing a procedure for readmitting an individual or individuals not responsible for disturbing the orderly conduct of the meeting.
Based on this law, we conclude that a board has the discretion to order the removal of a party who is disrupting a public meeting. If, however, the board exercised this discretion in an unreasonable manner, we also conclude that the board's actions may be sufficient grounds to justify recalling the members of the board. Such action could be considered misfeasance because the board members engaged in "wrongful conduct that ... interfere[d] with the performance of official duty"the board's duty to allow citizens to have access to board meetings. RCW 29.82.010(1), 42.30.010. For these reasons, we conclude that the second charge is factually sufficient.[3]
2. Legal Sufficiency
The real issue to be decided in relation to the second charge is whether the fire district board had a reasonable legal justification to order the removal of Osterhouse. If such a justification exists, the petition will be considered to be legally insufficient and the issue of factual sufficiency will thus become irrelevant. Greco, 105 Wash.2d at 671, 717 P.2d 1368. The parties dispute this issue, and Chappell insists that the fire district board had no reasonable grounds for exercising its discretion to eject Osterhouse from the meeting. However, the affidavits offered by Kast, Steertegem and Gregory show that the board did have sufficient cause to order the removal of Osterhouse.
Kast, Steertegem, and Gregory all agreed that Osterhouse's statements and actions were threatening; however, Chappell states that they were not. Nevertheless, an individual's perceptions will often determine what things or actions she will consider to be threatening. The relevant perceptions in this case would be those of Kast and Steertegem who both voted to eject Osterhouse from the meeting. If these two commissioners reasonably believed that Osterhouse posed a physical risk to Kast and Gregory, then they acted in a reasonable manner to eject Osterhouse. It is also significant that Osterhouse had interrupted the fire district board's discussion of the security system; his comment was out of order and should have been held until after their discussion. The Open Public Meetings Act does not purport to grant citizens the right to interrupt meetings as they see fit; rather, citizens are granted a privilege to be present during public meetings so that they can remain informed of an agency's actions. RCW 42.30.010. For all these reasons, we conclude that Commissioners Kast and Steertegem acted in a reasonable manner when they ordered the expulsion of Osterhouse. Because the fire district board ejected Osterhouse with a reasonable legal justification, we conclude that the second charge is legally insufficient.

CONCLUSION
We conclude that the trial court's decision should be reversed with regard to both counts. Petitioner Chappell has established factual and legal sufficiency with regard to the first charge that Kast engaged in malfeasance or misfeasance by violating the competitive bidding requirements imposed in RCW 52.14.110. Thus, the recall process should go forward with regard to that charge. However, Chappell has not established legal sufficiency of the second charge because Kast and Steertegem acted with legal justification and reasonable discretion when they voted to eject Osterhouse from the meeting. Thus, we conclude that the *684 second charge of the petition should be dismissed.
Reversed.
NOTES
[1] A public official may be recalled for acts of malfeasance, misfeasance or violations of her oath of office. Misfeasance and malfeasance may both be defined as "wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29.82.010(1). Misfeasance may also be defined as "performance of a duty in an improper manner." RCW 29.82.010(1)(a). In contrast, malfeasance may also be defined as "the commission of an unlawful act." RCW 29.82.010(1)(b). Finally, a violation of the oath of office will include "the wilful neglect or failure by an elective public officer to perform faithfully a duty imposed by law." RCW 29.82.010(2).
[2] Moreover, his conduct may also be considered to be misfeasance in that he "perform[ed] a duty in an improper manner," RCW 29.82.010(1)(a), or to be a violation of the oath of office because he "wilful[ly] ... fail[ed] ... to perform faithfully a duty imposed by law." RCW 29.82.010(2). Kast also argues that his conduct was not misfeasance or malfeasance because the state auditor concluded that the fire district, and not Kast specifically, had violated the state competitive bidding law. See In re Recall of Sandhaus, 134 Wash.2d 662, 672, 953 P.2d 82 (1998) (considering weight to be assigned to the state auditor's opinion that he had "found nothing which in his opinion amounted to `misfeasance, malfeasance or nonfeasance on the part of any official'"). However, Sandhaus does not appear to be applicable in this case because the state auditor did not make any conclusions regarding whether Kast's actions were unlawful or whether his actions would constitute grounds for recall.
[3] We must also decide whether Chappell has shown that he has knowledge that Kast intended to violate the Open Public Meetings Act. In re Recall of Anderson, 131 Wash.2d 92, 95, 929 P.2d 410 (1997). Kast has allegedly stated that he was familiar with the terms of the Open Public Meetings Act, and it may be possible to infer from his actions that he intentionally ejected Osterhouse while knowing that his actions violated the act. However, the real issue to be decided is whether Kast and the board had a legal justification for ejecting Osterhouse. Kast's intent is subsumed into this issue because he would presumably have no intent to violate the Open Public Meetings Act if he had a reasonable justification for ejecting Osterhouse.