# FILE

**IN CLERKS OFFICE**

**SUPREME COURT, STATE OF WASHINGTON**

DATE 3/28/13

_for_ CHIEF JUSTICE

This opinion was filed for record at 8:00AM on MARCH 28 2013

Ronald R. Carpenter
Supreme Court Clerk



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) | No. 88227-4 |
| | ) | |
| TERECIA F. BOLT, | ) | |
| | ) | |
| Mayor of the Town of Marcus. | ) | En Banc |
| | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Recall of | ) | |
| | ) | |
| DENNIS L. JENSON, | ) | |
| | ) | |
| Councilman, Position 4, of the Town | ) | MAR 2 8 2013 |
| of Marcus. | ) Filed _____ | |
| | ) | |
| _____ | ) | |

OWENS, J. -- This case concerns a recall petition filed against Mayor Terecia F. Bolt and Councilman Dennis L. Jenson of the town of Marcus. The petition included 10 charges against Mayor Bolt and 6 charges against Councilman Jenson. The superior court determined that only one charge against Mayor Bolt and Councilman Jenson was factually and legally sufficient to support a recall election. We find that none of the charges are factually and legally sufficient, and thus we reverse the superior court's decision on the one remaining charge.

FACTS

Marcus is a town of 183 people over 0.23 square miles near the Grand Coulee Dam. In November 2012, three other city council members (hereinafter, the recall petitioners) filed 10 recall charges against Mayor Bolt and 6 charges against Councilman Jenson and requested a recall election. Because of the number of charges, the underlying facts are included in the analysis of each charge below.

At the superior court, none of the parties were represented by counsel. The superior court found that the only factually and legally sufficient charge against Mayor Bolt and Councilman Jenson was related to equipment purchases made prior to council authorization but ratified after the fact (hereinafter, the preauthorization purchase charge).

The recall petitioners obtained counsel and appealed the superior court decision to this court, assigning error to the trial court's decision on all of the charges other than the preauthorization purchase charge. Unaware of the recall petitioners' appeal, Mayor Bolt and Councilman Jenson filed a motion to reconsider with the superior court and attached additional materials. The superior court struck the motion to reconsider and the attached materials because they were filed one day late. Mayor Bolt and Councilman Jenson, representing themselves, appealed the superior court's

decision to strike the materials attached to the motion for reconsideration[1] but did not ultimately file a proper cross appeal of the trial court's ruling on the preauthorization purchase charge. They apparently believed that the recall petitioners' appeal meant this court would automatically review all parts of the superior court's ruling, as their response brief to this court assigned error to the superior court's ruling on the preauthorization purchase charge. In the reply brief, the recall petitioners contend that Mayor Bolt and Councilman Jenson waived that issue on appeal by failing to properly file a cross appeal.

## ANALYSIS

I.      The Trial Court Correctly Ruled That Most of the Recall Charges Are Insufficient

A nonjudicial elected official can be recalled from office if a petition charges that the official has committed misfeasance or malfeasance while in office or that the official has violated the oath of office. CONST. art I, §§ 33-34. Misfeasance and malfeasance mean "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29A.56.110(1). Misfeasance also means "the performance of a duty in an improper manner," RCW 29A.56.110(1)(a), and malfeasance also means "the commission of an unlawful act," RCW

---

[1] Because the superior court did not err by striking the additional materials when the motion for reconsideration was not timely filed, and because the additional materials are not necessary to resolve this case, we deny the appeal of the superior court's decision to strike the additional materials.

29A.56.110(1)(b). A violation of the oath of office is "the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law." RCW 29A.56.110(2).

We have previously recognized that the legislature intended to limit the recall process so that public officials are protected from petitions based on frivolous or unsubstantiated charges. *In re Recall of Kast*, 144 Wn.2d 807, 812-13, 31 P.3d 677 (2001). Thus, recall petitions must "state the act or acts complained of in concise language" and "give a detailed description including the approximate date, location, and nature of each act complained of" (sometimes referred to as the "specificity requirement"). RCW 29A.56.110. After a recall petition is filed, a superior court determines whether the acts stated in the charge satisfy the recall criteria—essentially serving a gatekeeping function. *See* RCW 29A.56.140; *Kast*, 144 Wn.2d at 813. The courts do not evaluate the truthfulness of a petitioner's charges, instead considering only whether the charges are both factually and legally sufficient. RCW 29A.56.140; *Kast*, 144 Wn.2d at 813 (citing *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 764, 10 P.3d 1034 (2000)). Therefore, courts must determine "whether, accepting the allegations as true, the charges on their face support the conclusion that the officer abused his or her position." *In re Recall of Wasson*, 149 Wn.2d 787, 792, 72 P.3d 170 (2003).

Factual sufficiency means that the charges (1) satisfy the specificity requirement described above and (2) enable the public and the challenged public official to identify the "'acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'" *Kast*, 144 Wn.2d at 813 (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)). If an official is charged with a violation of the law, "the petitioners must at least have knowledge of facts which indicate an intent to commit an unlawful act." *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990).

Legal sufficiency requires that the petitioner "state with specificity *substantial conduct clearly amounting* to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274 (emphasis added). Thus, conduct that is insubstantial is legally insufficient. *Kast*, 144 Wn.2d at 815. To establish legal sufficiency, petitioners must identify the "standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001) (holding that a recall petition charging a council member with sleeping during a public meeting was legally insufficient because it failed to identify the rule that made such conduct wrongful).

We have also outlined additional rules for legal sufficiency. First, "discretionary acts of a public official are not a basis for recall insofar as those acts are an appropriate exercise of discretion by the official in the performance of his or

her duties." *Cole v. Webster*, 103 Wn.2d 280, 283, 692 P.2d 799 (1984). An official may be recalled for execution of discretionary acts only if the "official exercised discretion in a manifestly unreasonable manner." *In re Recall of Shipman*, 125 Wn.2d 683, 685, 886 P.2d 1127 (1995). Second, an elected official may not be recalled if his or her actions occurred in the course of justifiable conduct. *Kast*, 144 Wn.2d at 815.

When reviewing a superior court's decision in a recall case, this court applies the same reviewing criteria as the superior court. *In re Recall of Pearsall-Stipek*, 129 Wn.2d 399, 403, 918 P.2d 493 (1996). Below is an analysis of each charge that the superior court found insufficient. If a charge is clearly either factually or legally insufficient, we do not need to analyze whether it might be sufficient in other aspects.

A. Charge 1 (Mayor Bolt): Failure To Follow Personnel Policy

In charge 1 against Mayor Bolt, the recall petitioners allege that Mayor Bolt failed to follow the town's personnel policy when she discharged the town maintenance employee, thereby placing the town at risk of an employment lawsuit. The town personnel policy indicates that "[d]isciplinary action may be applied to correct behavior," and it lists a series of increasing disciplinary actions for different offenses. Clerk's Papers In the Matter of the Recall of Terecia F. Bolt (CP-Bolt) at 25. The record submitted with the petition indicates that the problems with the maintenance employee were well documented for many months prior to his termination. However, the termination letter sent to the employee—which identified

six reasons for his termination—does not mention any progressive discipline as described in the personnel policy.

Nonetheless, the recall petitioners do not explain how this personnel decision amounts to malfeasance, misfeasance, or a violation of the oath of office. Supervising an employee inherently involves a substantial amount of discretion, and the personnel policy states that "[t]he duties and performance of the Town Employees shall be the responsibility of the Mayor." *Id.* at 23. The recall petitioners do not explain how terminating this employee for numerous reasons after documenting a history of performance problems was an abuse of the mayor's discretion. Furthermore, to the extent that the recall petitioners allege that the mayor violated the law, they fail to meet the requirement to identify facts that indicate an intent by Mayor Bolt to violate the law. As a result, this charge is legally insufficient.

### B. Charge 1 (Councilman Jenson) and Charge 2 (Mayor Bolt): Improper Delegation of Supervisory Authority

In charge 1 against Councilman Jenson and charge 2 against Mayor Bolt, the recall petitioners allege that Councilman Jenson supervised the town maintenance employee and Mayor Bolt allowed him to do so.

The recall petitioners contend that it was Mayor Bolt's duty to supervise the employee and that this duty could not be delegated. *See* 3 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12:67 (3d ed. 2012) (noting generally that

powers given to an officer cannot be delegated). However, the recall petitioners do not explain how Mayor Bolt's and Councilman Jenson's behavior violated this standard. These charges are factually insufficient because they fail to identify the conduct or behavior that constituted Councilman Jenson's supervision of the employee or Mayor Bolt's delegation of that supervision.

C. Charge 2 (Councilman Jenson) and Charge 3 (Mayor Bolt): Bullying Employee and Conducting Personnel Discussion Outside of Executive Session

In charge 2 against Councilman Jenson and charge 3 against Mayor Bolt, the recall petitioners allege that Councilman Jenson bullied and harassed the town employee and that Mayor Bolt allowed the behavior. The recall petitioners also allege that the two violated the town employee's right to have his personnel matters discussed in executive session, thereby exposing the town to the risk of a lawsuit.

First, the bullying allegation is factually insufficient because it does not identify the conduct or behavior with any specificity. A recall charge must "give a detailed description including the approximate date, location, and nature of each act complained of," RCW 29A.56.110, and the recall petitioners simply make general allegations of "bullying" and "harassment." Clerk's Papers In the Matter of the Recall of Dennis L. Jenson (CP-Jenson) at 5; CP-Bolt at 5.

Second, the executive session charge is legally insufficient because the Open Public Meetings Act of 1971 (Act), chapter 42.30 RCW, does not *require* executive

sessions for personnel discussion. The Act requires that meetings be open to the public but "[n]othing contained in this chapter may be construed to prevent a governing body from holding an executive session" for a number of purposes, including "[t]o receive and evaluate complaints or charges brought against a public officer or employee." RCW 42.30.110(1)(f). This language plainly allows but does not require executive session for personnel discussions. The recall petitioners do not point to any other standard or rule that requires executive sessions for personnel decisions, and they also do not show any intent by either Mayor Bolt or Councilman Jenson to violate such a rule.

> D. Charge 4 (Councilman Jenson) and Charge 5 (Mayor Bolt): Allowing Improper Personal Use of Town Resources

In charge 5 against Mayor Bolt and charge 4 against Councilman Jenson, the recall petitioners allege that Councilman Jenson made improper personal use of town equipment and Mayor Bolt allowed him to do so. These charges arise out of Councilman Jenson's volunteer work around town, which included daily watering at the town park and performing other maintenance duties such as picking up litter. To carry out these volunteer tasks, he drove a town vehicle referred to as a "gator."[2] CP-Jenson at 34. At the heart of this charge is the fact that Councilman Jenson would sometimes stop at a neighbor's house for coffee on the way to his volunteer duties at

---

[2] A Gator™ is a small utility vehicle manufactured by John Deere.

the park. Councilman Jenson's decision to park the gator during his coffee with the neighbors is the basis for the charge of improper use of town resources.

On February 1, 2011, the town unanimously adopted guidelines for the use of town resources. The guidelines permitted de minimis personal use when it met certain standards, including not interfering with the performance of official duties and being brief in duration and frequency. The guidelines prohibited "[a]ny use for personal benefit or gain." CP-Bolt at 71. Mayor Bolt contacted the state auditor's office for additional guidance as to whether Councilman Jenson's actions fell within the guidelines. It appears that the council eventually censured Councilman Jenson for his use of the gator.

The superior court found that the allegations were insufficient because the alleged "use" was de minimis, permissible personal use and not prohibited by the town's guidelines. We affirm the superior court. Councilman Jenson's "use" involved parking the vehicle on the way to or in between his volunteer tasks. Even taking the allegations as true, the recall petitioners have not met the requirement to allege "substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274.

E. Charge 6 (Mayor Bolt): Failure To Assert Administrative Authority

In charge 6 against Mayor Bolt, the recall petitioners allege that Mayor Bolt allowed Councilman Jenson to continue to use the gator as described above because

Mayor Bolt was in a relationship with Councilman Jenson. In light of the analysis above, this charge is legally insufficient because it fails to identify the standard, rule, or law violated by Mayor Bolt.

F.   Charge 5 (Councilman Jenson): Unilateral Decision Regarding Gym Roof

In charge 5 against Councilman Jenson, the recall petitioners allege that Councilman Jenson "[w]hile acting under the pretense of Parks Chairman" authorized a provision of a bid for construction of a roof for the town gym without further council action. CP-Jenson at 6. The recall petitioners acknowledge that Councilman Jenson was not a council member at that time.

This charge is legally insufficient because Councilman Jenson was not in office at the time. Elected officials can be recalled for acts committed during a prior term of office. *Janovich v. Herron*, 91 Wn.2d 767, 776, 592 P.2d 1096 (1979). However, recall petitions are limited to actions taken while in office. *See* CONST. art. I, § 33 (allowing recall petitions based on charges "that such officer has committed some act or acts of malfeasance or misfeasance *while in office*, or who has violated *his oath of office*" (emphasis added)). There is no authority for allowing the recall of an elected official based on acts committed prior to being elected to office.

G.   Charge 7 (Mayor Bolt): Commingling Clerical and Mayoral Duties

In charge 7 against Mayor Bolt, the recall petitioners allege that the mayor commingled clerk "wages and/or positions" while also receiving compensation as

mayor. CP-Bolt at 7. The recall petitioners also allege that the mayor had other town employees fill out her time sheets and had the clerk-treasurer sign off on the mayor's time sheets.

The recall petitioners provide no basis for the allegation that the mayor had other town employees fill out or sign off on her time sheets, nor do they provide any specificity of the charges, such as identifying the town employees asked to fill out or sign off on the time sheets or any instances of such conduct. Thus, this portion of the charge is factually insufficient.

The "commingling" charge is legally insufficient because it fails to identify how Mayor Bolt's behavior was wrongful. The recall petitioners fail to identify a standard, law, or rule against the mayor acting as a backup employee when certain town employees are out on leave and receiving compensation for it. Indeed, the town personnel policy specifically provides for elected town officials performing hourly employee duties when there is a short-term need for help. The recall petitioners similarly fail to identify how these activities interfered with Mayor Bolt's performance of her mayoral duties. In a similar case, a public official sought retirement credit for administrative work and this court held that "nothing suggests that seeking compensation for time worked constituted a substantial act that affected, interrupted, or interfered with the performance of Ward's official duties, or that rendered his performance of a duty in an improper manner." *In re Recall of Ward,*

175 Wn.2d 429, 437-38, 282 P.3d 1093 (2012). The recall petitioners fail to identify any wrongful behavior in this charge and thus it is legally insufficient.

H. Charge 8 (Mayor Bolt): Failure To Hold Safety Meetings

In charge 8 against Mayor Bolt, the recall petitioners allege that Mayor Bolt failed to hold monthly safety meetings after being advised by the Washington Department of Labor and Industries (L&I) that such meetings are required by law. This charge is both factually and legally insufficient.

The recall petitioners claim that since the L&I notification on April 24, 2012, "there have been no reports to Council or any known records of such safety meetings taking place." CP-Bolt at 7. However, being unaware of such meetings does not constitute knowledge that such meetings have not taken place. Indeed, in her response, Mayor Bolt submitted documentation from safety meetings each month since the L&I notification. Thus, this charge is factually insufficient.

In addition, for a charge based on a violation of the law, "the petitioners must at least have knowledge of facts which indicate an intent to commit an unlawful act." *Wade*, 115 Wn.2d at 549. The recall petitioners make no showing that there was any intention to violate the requirement to hold safety meetings. Thus, this charge is also legally insufficient.

13

I. Charge 9 (Mayor Bolt) and Charge 6 (Councilman Jenson): Improper Personal Relationship

In charge 9 against Mayor Bolt and charge 6 against Councilman Jenson, the recall petitioners allege that the two have a long-term personal relationship that creates a public perception of a conflict of interest and the appearance of unfairness. Mayor Bolt and Councilman Jenson acknowledge that they have "a close personal relationship." CP-Jenson at 70; CP-Bolt at 121. However, the recall petitioners fail to explain how this relationship constituted misfeasance, malfeasance, or a violation of the oath of office. The recall petitioners must identify the "standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *Ackerson*, 143 Wn.2d at 377. Here, the recall petitioners fail to identify a standard, law, or rule against a close personal relationship between a mayor and council member. As a result, this charge is legally insufficient.

J. Charge 10 (Mayor Bolt): Authorizing Payment for Hours Not Yet Worked

In charge 10 against Mayor Bolt, the recall petitioners allege that, on payday, the mayor issues paychecks prior to the end of the workday, that the paychecks include pay for hours not yet worked on that specific day, and that such a practice is against the personnel pay policy.

This charge is not legally sufficient. First, the personnel pay policy contains no language regarding the timing of paychecks. Thus, the mayor's actions did not violate

the personnel policy as alleged in the recall petition. In their briefs to this court, the recall petitioners alleged that early distribution violates state laws against gifts of public funds. Even if that were true, recall petitions are legally sufficient only if they allege "substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274. Distributing paychecks before the end of the day certainly does not amount to "substantial conduct." As a result, this charge is not legally sufficient.

II.     The Preauthorization Purchase Charge Was Also Insufficient

As described above, Mayor Bolt and Councilman Jenson, acting pro se, failed to properly file a cross appeal on the preauthorization purchase charge, the only charge found by the superior court to be factually and legally sufficient. While the recall petitioners are correct that Mayor Bolt and Councilman Jenson technically waived the issue of the preauthorization purchase charge on appeal by failing to file a proper cross appeal, we nevertheless choose to review the issue. Under RAP 1.2(a), the rules of appellate procedure should be "liberally interpreted to promote justice and facilitate the decision of cases on the merits."

In this case, the parties represented by counsel were able to file a proper appeal, while the parties not represented by counsel attempted to file a motion for reconsideration with the trial court and then appealed a portion of the trial court's denial of that motion, but failed to understand the need to file a cross appeal in this

court of the underlying decision on the preauthorization purchase charge. *See* Letter from Terecia F. Bolt to Supreme Court Clerk, Dec. 19, 2012 (explaining that "[i]t appeared to us that a motion for reconsideration was the next logical step in terms of our process before pursuing an appeal to the State Supreme Court"). They appeared to believe that the preauthorization purchase charge would be reviewed by this court as part of the recall petitioners' appeal because their response brief to this court assigned error to the superior court's ruling on that issue. An appellate court "'will disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review.'" *S&K Motors, Inc. v. Harco Nat'l Ins. Co.*, 151 Wn. App. 633, 638-39, 213 P.3d 630 (2009) (alteration in original) (quoting RAP 5.3(f)). Mayor Bolt and Councilman Jenson expressed their desire to challenge the trial court's ruling on this issue in both their motion for reconsideration and in their response brief to this court. The recall petitioners had the opportunity to respond to these arguments in their reply brief and thus were not disadvantaged by the failure to properly file a cross appeal. Furthermore, refusing to review this issue on appeal would prioritize form over substance and disadvantage these pro se parties who are small-town civil servants who receive only a nominal stipend for their service[3] and are not in court on their own accord.

---

[3] The mayor receives a stipend of $94.35 per month.

Because the appeal filed by Mayor Bolt and Councilman Jenson was sufficient under RAP 5.3(f), we turn to the merits and determine that the trial court's decision on the preauthorization purchase was incorrect. The trial court ruled that the charge that Mayor Bolt and Councilman Jenson made three purchases of used equipment for the town without advance authorization of the town council was legally sufficient for recall. First, we note that (1) the need to purchase the equipment was discussed at town council meetings prior to purchase; (2) the purchases were unique opportunities to buy used equipment at significantly reduced prices and would not have been available if Mayor Bolt and Councilman Jenson had waited for the next council meeting for approval; and (3) the purchases were ratified by the town council after the fact, including by some of the recall petitioners themselves who are members of the town council. Even setting aside these facts, however, this charge fails because the recall petitioners never identified the standard, rule, or law violated by Mayor Bolt and Councilman Jenson. They do not point to any purchasing policy or town ordinance that requires authorization by the council prior to purchase. *Cf. In re Recall of Heiberg*, 171 Wn.2d 771, 774, 257 P.3d 565 (2011) (reviewing a recall charge based on a mayor's equipment purchase prior to council authorization when such authorization was required by town ordinance).

Even if the recall petitioners did identify a law or rule against purchasing equipment prior to approval by the town council, there is no indication that Mayor

Bolt and Councilman Jenson had an intent to violate such a law. In *Heiberg*, this court reviewed a recall charge against a mayor who purchased a truck for the town without obtaining approval from the town council or requesting bids, as required by state law[4] and town ordinance. *Id.* Upon finding out that he needed authorization, the mayor attempted to obtain ratification from the council and, failing that, he fully reimbursed the town for the purchase. *Id.* at 779. This court found that there was no factual basis for an inference that the mayor intended to violate the law when he purchased the truck, and found that the recall charge was factually insufficient. *Id.* Similarly, Mayor Bolt and Councilman Jenson promptly requested approval after the purchases, and the minutes do not reflect any discussion that such purchases prior to authorization were in violation of any law. Accordingly, we reverse the trial court and find that the preauthorization charge is not legally or factually sufficient.

## CONCLUSION

Although courts do not review the truthfulness of recall charges against publicly elected officials, we are responsible for ensuring that such charges are factually and legally sufficient. Here, we affirm the trial court's ruling that 9 of the 10 charges against Mayor Bolt and 5 of the 6 charges against Councilman Jenson were either factually or legally insufficient. In the interests of justice and to ensure that this

---

[4] The *Heiberg* reference to state law may refer to statutes requiring a competitive bidding process for purchases over a certain amount, which would apply to the $12,000 truck purchase in *Heiberg* but do not apply to the purchase amounts in this case.

case is decided on its merits, we are compelled to review the trial court's ruling on the remaining recall charge. Because the recall petitioners did not identify a rule, standard, or law violated by Mayor Bolt or Councilman Jenson, we hold that that recall charge is also legally insufficient.

WE CONCUR:

Madsen, C.J.

Fairhurst, J.

Stephens, J.

Wiggins, J.

González, J.

George McCloud, J.