

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 2 2019

~~Fairhurst~~ . CA
CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on Sept. 12, 2019
Susan L. Carlson
Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE THE MATTERS OF THE RECALL OF: | No. 96839-0 |
| JEAN BURNHAM, DALE JACOBSON, RYAN SMITH, SUE CAMERON, | En Banc |
| MAYOR AND COUNCIL MEMBERS OF THE TOWN OF CATHLAMET. | Filed SEP 1 2 2019 |

OWENS, J. – This case concerns a recall petition filed against the mayor and

three members of the town council of Cathlamet. All of the charges against the

councillors and most of the charges against the mayor pertain to Cathlamet's purchase

of a parcel of real property. The remaining charges against the mayor pertain to his

use of separate town-owned lots to park his personal business vehicles. We hold that

the charges pertaining to Cathlamet's property purchase are legally insufficient

because acquisition of real property is a fundamental government purpose and a

discretionary act that was not manifestly unreasonable in this instance. We hold that

the charges pertaining to the mayor's use of town-owned lots are also legally

1

insufficient because the mayor's alleged conduct was not substantial. Accordingly, we affirm the superior court.

## FACTS

Cathlamet is a town of 550 people on the Columbia River in Wahkiakum County. In December 2018, Bill Wainwright, a local resident and member of an unincorporated group called Concerned Citizens of Cathlamet, filed six recall charges against the mayor, Dale Jacobson, and two identical recall charges each against town council members Jean Burnham, Sue Cameron, and Ryan Smith. Most of the charges pertain to the town's purchase of a parcel of real property located at 20 Butler Street (the Butler Street Property) in Cathlamet. Charges 1 and 2 against Burnham, Cameron, and Smith, and charges 1, 2, and 3 against Jacobson allege violation of and conspiracy to violate article VIII, section 7 of the Washington State Constitution via a gift of public funds to the seller of the Butler Street Property, Bernadette Goodroe. Charge 4 against Jacobson alleges on essentially the same basis that he violated RCW 42.23.070(2), which prohibits municipal officials from giving or receiving gifts related to their official capacities.

The remaining charges against Jacobson pertain to his use of separate town-owned lots to park personal business vehicles. Charges 5 and 6 against Jacobson allege violation of article VIII, section 7 of the state constitution via a gift of public funds to himself and violation of RCW 42.23.070(1), which prohibits municipal officers from granting themselves or others "special privileges."

The superior court held a sufficiency hearing regarding the recall charges on

2

January 22, 2019, and issued a written ruling on January 25, concluding that all charges were legally insufficient. Wainwright filed a notice of appeal on February 6.

I.     Cathlamet's Purchase of the Butler Street Property

The Butler Street Property is a 6,200-square-foot corner lot in Cathlamet. From the 1920s through the 1970s, it housed a gas station, including four underground fuel storage tanks. In the 1970s, the town discovered that the tanks were leaking. In 1997, the Bank of the Pacific purchased the Butler Street Property. After soil samples revealed concentrations of petroleum chemicals exceeding levels permissible by law, the bank invested in remediating the site. Soil and groundwater samples taken thereafter demonstrated contamination levels within legal limits. A small quantity of residual contaminated soil was left in place due to inaccessibility.

An environmental covenant was recorded for the Butler Street Property in 2005 to prevent disturbance of the small area of residual contaminated soil that could not be removed. The covenant prohibits an owner from undertaking any activity that might release or expose the residual contaminated soils without prior written approval from the Department of Ecology (Department). Such activities include digging, piercing the surface, or placing any objects that stress the surface beyond its load-bearing capacity. The Department issued a "No Further Action" letter to the bank in 2006, effectively declaring remediation complete. Clerk's Papers (CP) at 109.

In 2007, Goodroe and her late husband purchased the Butler Street Property from the bank for $75,000. The bank executed a hold harmless agreement, indemnifying the

3

Goodroes for any further remediation. The agreement expressly stated that the bank's liability "survive[s] its sale of the property . . . and shall continue in effect in the event of subsequent sales of the property." CP at 120. In 2011, the value of the Butler Street Property was assessed at $75,000; in 2018, it was assessed at $34,400. As of 2018, the Butler Street Property was vacant and being used as a parking lot. Sometime prior to 2018, Goodroe served on the town council.

On March 15, 2018, Jacobson initiated Cathlamet's purchase of the Butler Street Property from Goodroe and directed the town to convey $1,000 in earnest money. Goodroe's original asking price was $72,000, which the town negotiated down to $68,000. Cathlamet hired a private appraiser, who appraised the Butler Street Property at $40,000, assuming "no lasting environmental impact." CP at 200. The appraisal noted a likely change in land use to a "possible park/open space." CP at 199. In declarations, Jacobson and Cameron stated that the council sought to purchase the Butler Street Property for conversion into a "pocket park." CP at 141, 103. Cameron, a former environmental health director, declared that the "covenant does not interfere with any contemplated use of the property." CP at 104.

On June 18, the town council held a regular meeting at which the council approved the purchase of the Butler Street Property by a majority vote. In declarations introduced by Wainwright, two town residents stated that they heard Burnham say in July 2018 that the council approved the purchase because "'we wanted Bernadette Goodroe to get her money back.'" CP at 231, 233. On July 10, Cathlamet's attorney

4

advised Jacobson against closing on the purchase. The purchase was completed for a final sale price of $68,000. A statutory warranty deed was recorded on July 16.

On December 12, the Department conducted a review of the Butler Street Property and reported that "the requirements of the [covenant] have been satisfactorily completed. No additional remedial action is necessary at this time." CP at 135.

II.     Jacobson's Use of Town-Owned Lots To Park His Business Vehicles

Jacobson owns a propane delivery business located across the street from and adjacent to two vacant lots owned by Cathlamet (not including the Butler Street Property). Wainwright alleged that beginning in January 2016, Jacobson used the lots to store, repair, and vent propane delivery trucks without paying compensation to the town. Included in the record is a photograph of three trucks parked on one of the lots.

Wainwright further alleged that Jacobson "exercised dominion and control" over the two town-owned lots by excluding others and granting conditional permission for others to use the property. CP at 24. Wainwright stated in a declaration that in September of 2018 he spoke with a Cathlamet staff member about parking his boat on one of the town-owned lots. The staff member allegedly denied his request, saying, "'Jacobson determines who is going to park there.'" CP at 238. Half an hour later, the staff member called Wainwright back to tell Wainwright that Jacobson said it "'would be OK'" for Wainwright to park his boat there, though Jacobson wanted to meet with Wainwright to show him where and how to park. *Id.* Wainwright also stated in the same declaration that another town resident told

5

Wainwright that the resident had similarly contacted and spoken with the same Cathlamet staff member in 2017 about parking a trailer on the lot and the staff member denied permission, stating, "'No, we do not allow that.'" *Id.*

Jacobson admitted in a declaration that he utilized the town-owned lots to park "up to four vehicles." CP at 141. However, he maintained that "there is plenty of additional parking space available for others to use," which is "frequently used by fishermen to park their vehicles and boat trailers while they are fishing." *Id.* Jacobson stated that he was not aware of any basis for the claims that he excluded others and said he had "never done so." *Id.* Jacobson declared that he knew that the lots were town property and did not treat them as his own.

## ISSUES

I.  Are the charges pertaining to Cathlamet's purchase of the Butler Street Property legally and factually sufficient?

II.  Are the charges pertaining to Jacobson's use of town-owned lots to park his vehicles legally and factually sufficient?

## ANALYSIS

"Recall is the electoral process by which an elected officer is removed before the expiration of the term of office." *Chandler v. Otto*, 103 Wn.2d 268, 270, 693 P.2d 71 (1984). In Washington, voters have a constitutional right to recall a nonjudicial elected official who has "committed some act or acts of malfeasance or misfeasance while in office, or who has violated his [or her] oath of office." WASH. CONST. art. I,

§ 33. "Misfeasance" and "malfeasance" are statutorily defined as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29A.56.110(1). Additionally, "misfeasance" means "the performance of a duty in an improper manner," while "malfeasance" also means "the commission of an unlawful act." RCW 29A.56.110(1)(a)-(b). A "violation of the oath of office" is defined as "the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law." RCW 29A.56.110(2).

It is not the role of courts to assess the truth or falsity of recall charges, but to evaluate their factual and legal sufficiency. RCW 29A.56.140; *In re Recall of Kast*, 144 Wn.2d 807, 812-13, 31 P.3d 677 (2001). "We merely function as a gatekeeper to ensure that the recall process is not used to harass public officials by subjecting them to frivolous or unsubstantiated charges." *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005). We determine "whether, accepting the allegations as true, the charges on their face support the conclusion that the officer abused his or her position." *In re Recall of Wasson*, 149 Wn.2d 787, 792, 72 P.3d 170 (2003).

Factual sufficiency requires that a recall petition "give a detailed description including the approximate date, location, and nature of each act complained of," RCW 29A.56.110, which, if accepted as true, "would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office." *Chandler*, 103 Wn.2d at 274. Legal sufficiency, on the other hand, requires that a recall petition "state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or

violation of the oath of office." *Id.* A petition must identify a standard, law, or rule that makes the elected official's conduct unlawful. *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001). "Legally sufficient means that an elected official cannot be recalled for appropriately exercising the discretion granted him or her by law." *Chandler*, 103 Wn.2d at 274. Discretionary acts are legally sufficient only if an elected official exercised discretion in a "manifestly unreasonable" manner. *Greco v. Parsons*, 105 Wn.2d 669, 672, 717 P.2d 1368 (1986).

We review a superior court's sufficiency ruling de novo, applying the same criteria as the superior court. *In re Recall of Bolt*, 177 Wn.2d 168, 175, 298 P.3d 710 (2013). "If a charge is clearly either factually or legally insufficient, we do not need to analyze whether it might be sufficient in other aspects." *Id.*

I.    Cathlamet's Purchase of the Butler Street Property

Wainwright charges Jacobson, Cameron, Smith, and Burnham with violating and conspiring to violate article VIII, section 7 of the Washington State Constitution by making an alleged gift of public funds to Goodroe in approving Cathlamet's purchase of the Butler Street Property. He avers that "[i]t was manifestly unreasonable for the Councilors to vote in favor of paying $68,000.00 for land that, if in pristine condition[,] would be worth $40,000.00." Appellant's Opening Br. at 25.

A. *Gift of Public Funds*

The Washington State Constitution prohibits gifts of public funds: "[n]o county, city, town or other municipal corporation shall hereafter give any money, or

8

property . . . to or in aid of any individual . . . ." WASH. CONST. art. VIII, § 7. The "manifest purpose" of this prohibition "is to prevent [public] funds from being used to benefit private interests where the public interest is not primarily served." *Japan Line, Ltd. v. McCaffree*, 88 Wn.2d 93, 98, 558 P.2d 211 (1977). We use a two-pronged analysis to determine whether a gift of public funds has occurred. First, courts must ask whether the funds were expended to carry out a fundamental purpose of the government; only if a fundamental government purpose was not served do courts then inquire into donative intent and consideration. *CLEAN v. State*, 130 Wn.2d 782, 797-98, 928 P.2d 1054 (1996).

We have found expenditures of public funds violative where a county gave funds to a private corporation for an agricultural fair, *Johns v. Wadsworth*, 80 Wash. 352, 355, 141 P. 892 (1914), and where a city acquired real property intending to resell it to a private party and then did so. *Lassila v. City of Wenatchee*, 89 Wn.2d 804, 810-11, 576 P.2d 54 (1978) ("At acquisition a municipality must at very least intend *a* public purpose to insure that a later sale to a private party does not violate the constitutional prohibition."). In contrast, we found use of public funds to construct a sports stadium not violative when the stadium would remain publicly owned and managed. *CLEAN*, 130 Wn.2d at 799.

It is apparent that acquisition of real property for public use is a fundamental government purpose of a municipality. "The council of [a] town shall have power . . . [t]o purchase . . . such real estate . . . as may be necessary or proper for municipal

9

purposes, and to control, dispose of and convey the same for the benefit of the town." RCW 35.27.370(2); *see also* RCW 35.23.452 (codifying the power of second-class cities to acquire real property); RCW 35.22.280(6) (codifying the power of first-class cities to do the same). What's more, here the town council sought to purchase the Butler Street Property for conversion into a "pocket park." CP at 141, 103. We have recognized that "use of land for park or playground purposes is a public use." *Batchelor v. Madison Park Corp.*, 25 Wn.2d 907, 924, 172 P.2d 268 (1946). RCW 35.23.452 and RCW 35.22.280(11) specifically codify the power of cities to acquire land for parks. Here, as in *CLEAN*, the Butler Street Property remains and is intended to remain owned and managed by the town. Thus, the purchase of the Butler Street Property was not a gift of public funds because acquisition of property, especially for use as a public park, reasonably fulfills a fundamental government purpose.

Wainwright argues that donative intent motivated Cathlamet's purchase of the Butler Street Property. Two town residents claim that Burnham said the council approved the purchase because "'we wanted Bernadette Goodroe to get her money back.'" CP at 231, 233. While these statements, if accepted as true, might be factually sufficient to support the charges that the council members and mayor committed a gift of public funds, those charges remain nonetheless legally insufficient because Cathlamet purchased the Butler Street Property to carry out a government purpose and therefore, as a matter of law, did not effect a gift of public funds.

B. *Discretionary Act*

A municipality's acquisition and disposal of real estate for public purposes is an inherently discretionary act. "Every town . . . may purchase, lease, receive, hold, and enjoy real and personal property and control, lease, sublease, convey, or otherwise dispose of the same for the common benefit." RCW 35.27.010. In *Miller v. City of Pasco*, 50 Wn.2d 229, 233, 310 P.2d 863 (1957), we held that city officials' decision to sell a parcel of real property was "[i]n the exercise of their discretion," based on statutory language identical to RCW 35.27.010. Likewise, here the town council members exercised their discretion in deciding to purchase the Butler Street Property.

A discretionary act is legally sufficient for purposes of a recall petition only where discretion was exercised in a "manifestly unreasonable" manner. *Greco*, 105 Wn.2d at 672. We have held that a "general statement that public funds are being wasted is insufficient evidence" of a manifestly unreasonable exercise of discretion. *Cole v. Webster*, 103 Wn.2d 280, 285, 692 P.2d 799 (1984). Here, Wainwright essentially asserts that public funds were wasted when the town council approved of purchasing the Butler Street Property for $68,000. Wainwright characterizes the price paid as manifestly unreasonable given past contamination of the Butler Street Property, projected costs of periodic monitoring, and a private appraisal that valued the site at $40,000. However, the Goodroes purchased the Butler Street Property from the bank for $75,000 in 2007, and it was assessed at $75,000 in 2011. Goodroe's original 2018 asking price was $72,000, which Cathlamet negotiated down by $4,000.

11

Wainwright also appears to overlook the bank's continuing hold harmless agreement, which runs with the property and shields successive owners from liability for any additional future remediation that may be necessary.

Accordingly, we conclude that the council's decision to purchase the Butler Street Property for $68,000 cannot be characterized as manifestly unreasonable. While some town residents may disagree with the council's decision to purchase the Butler Street Property for that price, a difference of opinion is not a sufficient basis to recall an elected official. As we observed in *Chandler*, "the drafters of Washington's recall provision wanted to prevent recall elections from reflecting on the popularity of the political decisions made by elected officers." 103 Wn.2d at 271. Moreover, "an elected official cannot be recalled for appropriately exercising the discretion granted him or her by law." *Id.* at 274. Here, Jacobson, Burnham, Cameron, and Smith appropriately exercised their lawful discretion as elected town officials.

Thus, we hold that the charges pertaining to Cathlamet's purchase of the Butler Street Property are legally insufficient. This disposes of charges 1 and 2 against Burnham, Cameron, and Smith, as well as charges 1, 2, 3, and 4 against Jacobson.

## II. Jacobson's Use of Town-Owned Lots To Park His Vehicles

Wainwright charges Jacobson with making a gift of public funds to himself and conferring a special privilege to himself by granting himself use of town-owned lots to park his vehicles and excluding others from doing the same. A gift of public funds includes giving "property . . . to or in aid of any individual." WASH. CONST. art. VIII,

§ 7. RCW 42.23.070(1) prohibits any "municipal officer" from using his or her position to "secure special privileges or exemptions for himself, herself, or others."

"To be legally sufficient, the petition must state with specificity *substantial conduct* clearly amounting to misfeasance, malfeasance or violation of the oath of office." *Chandler*, 103 Wn.2d at 274 (emphasis added). We held that alleged conduct was insubstantial, and thus legally insufficient, when a mayor sometimes parked a town vehicle at a neighbor's house when he stopped to have coffee with the neighbor. *Bolt*, 177 Wn.2d at 178. In contrast, we held that alleged conduct was legally sufficient when a mayor demanded that police investigate an anonymously circulated pamphlet regarding the mayor: the mayor's demand was "not only a misuse of city resources but also an improper interference with the police officers' official duties." *In re Recall of Sun*, 177 Wn.2d 251, 258, 299 P.3d 651 (2013).

Here, we conclude that Jacobson's alleged conduct is not substantial because there is no evidence that Jacobson sought to exclude others from using the town-owned lots and he did not receive any property. Wainwright's declaration, if accepted as true, establishes only that a Cathlamet staff member denied a town resident permission to park a trailer on the town-owned lots in 2017; Jacobson himself approved Wainwright's 2018 request to park a boat on the lots. Moreover, while Jacobson admits that he utilized the town-owned lots to park "up to four vehicles," he maintains that "there is plenty of additional parking space available for others to use," which is "frequently used by fishermen to park their vehicles and boat trailers while

they are fishing." CP at 141. Jacobson is not securing special privileges for himself because the right to park on the town-owned lots is one that is held in common by local residents and visitors. Nor has Jacobson made himself the recipient of a gift of public funds because did not receive any property; rather, as in *CLEAN*, the lots remained owned and managed by the town. This case is similar to *Bolt*: a mayor's use of municipal property by parking somewhere that a local resident objects to does not rise to the level of substantial conduct simply because the resident objects.

In sum, we hold that the charges pertaining to Jacobson's use of town-owned lots to park his vehicles are legally insufficient. This disposes of charges 5 and 6 against Jacobson.

## CONCLUSION

We hold that the recall charges against Jacobson, Burnham, Cameron, and Smith pertaining to Cathlamet's purchase of the Butler Street Property are legally insufficient because acquisition of real property, especially for parks, is a fundamental purpose of municipal government and because, as a discretionary act, the purchase was not manifestly unreasonable. We further hold that the recall charges against Jacobson pertaining to his use of a town-owned lot to park his business vehicles are legally insufficient because Jacobson's alleged conduct is not substantial: he exercised a common right of access and did not receive property. Accordingly, we affirm the superior court.

14

WE CONCUR:

Fairhurst, C.J.

Johnson, J.

Madsen, J.

Stephens, J.

Owens, J.

Yu, J.

No. 96839-0

GONZÁLEZ, J. (dissenting)—I largely agree with the majority's statement of the controlling law. The power to buy and sell property is a power held by city officials, and the exercise of that power, even if improvident, is not normally an act that would subject an elected officer to recall. Majority at 11 (citing *Miller v. City of Pasco*, 50 Wn.2d 229, 233, 310 P.3d 863 (1957)). I also agree that generally, when the power to make a decision is vested in the discretion of elected officials, those officials "cannot be recalled unless they arbitrarily or unreasonably exercised such discretion." *Cole v. Webster*, 103 Wn.2d 280, 284, 692 P.2d 799 (1984). But "[a] clear abuse of discretion may be shown by demonstrating the discretion was exercised in a manner which was manifestly unreasonable or exercised on untenable grounds *or for untenable reasons.*" *Id.* at 284-85 (emphasis added) (citing *Wilson v. Bd. of Governors*, 90 Wn.2d 649, 656, 585 P.2d 136 (1978)). It is clearly untenable, and a clear abuse of discretion, for a town to purchase property at a vastly inflated price out of a desire to make a gift that would violate article VIII, section 7 of our state constitution and RCW 42.23.070. To the extent the

1

majority opinion finds that paying an inflated purchase price out of a desire to give a gift of part of the sale price is not a recallable allegation, I respectfully dissent.

I emphasize that our role here is highly limited. It is not our task to determine whether the facts alleged are true. *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005) (citing *In re Recall of Kast*, 144 Wn.2d 807, 813, 31 P.3d 677 (2001)). The recall petitioner merely needs to allege, under oath, that they "believe the charge or charges to be true and have knowledge of the alleged facts upon which the stated grounds for recall are based." RCW 29A.56.110. We have previously interpreted that to require personal knowledge of the facts alleged. *E.g.*, *West*, 155 Wn.2d at 666 (citing *In re Recall of Beasley*, 128 Wn.2d 419, 428, 908 P.2d 878 (1996)). Direct knowledge of recallable conduct is not required; reasonable inferences can be made. *Id.* at 665 (citing *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

Fairly read, Bill Wainwright has alleged recallable misfeasance in connection with the purchase of the Butler Street property. Wainwright's recall petition and supporting documents support an inference that Mayor Jacobson and several members of the Cathlamet Town Council intended to make a gift of public funds to their former colleague Bernadette Goodroe by purchasing her Butler Street property for far more than it was worth. Specifically, Wainwright submitted evidence that the Goodroes purchased the property for $75,000 in 2007. In 2018, it

2

was assessed at $34,400. That same year, a private appraiser hired by the town appraised the property at $40,000, assuming "no lasting environmental impact." Clerk's Papers at 200. Because of that potential environmental impact and accompanying potential liability, legal counsel recommended against the purchase. *See id.* at 227-29 (describing environmental contamination issues with the property). Nonetheless, the property was purchased for $68,000, about 170% of its conditionally appraised value. Wainwright also submitted signed affidavits that council member Jean Burnham said the city "'bought [the property] to keep the Wallers and Lakes from having it and [because] we wanted Bernadette Goodroe to get her money back.'" *Id.* at 231. Taken together, this evidence is sufficient to support an inference that a gift of public funds was intended. This allegation is both factually and legally sufficient to survive judicial review.

Because I believe the people should decide, I respectfully dissent.

González, J.

McCloud, J.

Wiggins, J.