FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 27, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 27, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) | No. 103444-0 |
| | ) | |
| RACHEL RUELAS, City of Mabton Mayor. | ) | EN BANC |
| | ) | |
| | ) | Filed: <u>March 27, 2025</u> |

GONZÁLEZ, J.—The people's right to seek to recall their elected officials for misfeasance, malfeasance, or violation of the oath of office is enshrined in our state constitution. CONST. art. I, §§ 33-34. Our constitution directs the legislature to "pass the necessary laws to carry out" this constitutional process and "to facilitate its operation and effect without delay." CONST. art. I, § 34. Our legislature has carried out this direction by, among other things, directing the courts to act quickly when recall petitions are presented and appealed. RCW 29A.56.110, .140, .270. We have recognized that recall cases are "urgent and deserving of accelerated procedure." *In re Recall of West*, 156 Wn.2d 244, 251 n.2, 126 P.3d 798 (2006).

But a court's ability to reach a fair judgment depends in part on the parties fulfilling their obligation to file an adequate record and timely briefing. The recall petitioners here filed serious charges against Mayor Rachel Ruelas, generally alleging she failed to timely do her work and used public resources to benefit her

own private business. A superior court found two of the charges legally and factually sufficient to go to the voters.

Mayor Ruelas timely filed a notice of appeal to the Supreme Court. But Mayor Ruelas missed the initial deadline to file her designation of clerk's papers and her statement of arrangements. She also missed the court's revised deadline to file her designation of clerk's papers and statement of arrangements. She did not respond to our acting clerk's direction to explain the apparently duplicative filings in this case. She did not timely file a merits brief. She requested an extension of time to file that brief weeks after that deadline had passed.

Based on Mayor Ruelas's repeated failure to meet deadlines, the recall petitioners (appellees in this court) moved to dismiss for failure to prosecute. They contend the mayor's failure to timely do her budgeting work put the city in a perilous position and that her failure to meet this court's deadlines was a stalling tactic. The appellees' motion was passed to the merits, and we address it now.

Court rules prescribing deadlines for the filing of briefs are neutral—they do not favor either party. These rules exist to ensure that the appellate process proceeds without unnecessary delay. The legislature has charged the judiciary with accelerating the review of recall petitions. We have an obligation to timely dispose of recall cases. *See West*, 156 Wn.2d at 252. Courts have the inherent power to dismiss cases for want of prosecution. *See Snohomish County v. Thorp*

*In re Recall of Ruelas*, No. 103444-0

*Meats*, 110 Wn.2d 163, 166-67, 750 P.2d 1251 (1988) (quoting *State ex rel.*

*Dawson v. Superior Ct.*, 16 Wn.2d 300, 304, 133 P.2d 285 (1943)).

      Mayor Ruelas's failure to meet court-imposed deadlines in her own appeal has prevented us from timely disposing of this case.  Therefore, appellees' motion to dismiss for failure to prosecute is granted, this appeal is dismissed, and the case is remanded.

_____
González, J.

WE CONCUR:

_____
Johnson, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____

_____
Mungia, J.

3

No. 103444-0

GORDON McCLOUD, J. (dissenting)—I agree with the majority that the legislature has directed us to resolve recall cases quickly. Majority at 1. I also agree with the majority that Mayor Rachel Ruelas missed her filing deadlines and that she is the one responsible for delaying our consideration of her case. *Id.* at 3.

But we are the gatekeepers of the recall process. We are supposed to protect the public by dismissing recall petitions that are based on """"frivolous or unsubstantiated charges.""" *In re Recall of Inslee*, 200 Wn.2d 809, 817, 522 P.3d 972 (2023) (quoting *In re Recall of Riddle*, 189 Wn.2d 565, 570, 403 P.3d 849 (2017) (quoting *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.33d 1190 (2005))). This ensures that officials elected by the people are removed from office by the people only for actual abuses of power—not for "'political issue[s] or dispute[s] between the recall petitioners and the elective officer . . . submerged beneath the rhetoric of the charge.'" *Chandler v. Otto*, 103 Wn.2d 268, 271, 693 P.2d 71 (1984) (quoting Michael L. Cohen, *Recall in Washington: A Time for Reform*, 50 WASH. L. REV. 29, 30 (1974)).

That's what the legislature intended when it amended the recall statutes to require petitioners to prove the sufficiency of their charges. *Id.* at 274 ("We believe

1

the changes indicate a legislative intent . . . to allow recall for cause yet free public officials from the harassment of recall elections grounded on frivolous charges or mere insinuations."). That's what the drafters of Washington's recall provision intended by allowing an elected official's removal only for cause. *Id.* at 271 (citing 4 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 12.251(b) at 334 (3d rev. ed. 1979)).

We uphold our gatekeeping duty by deciding recall cases on the merits when we can—not by dismissing them because of the elected official's brief delays. *Cf.* RAP 1.2(a) ("[Court] rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits.").

To be sure, the charges in this recall petition are serious. Majority at 1-2. The petition's proponents allege that Ruelas (1) failed to provide a budget to the Mabton city council, in violation of RCW 35A.33.075, and (2) secured special privileges for herself by advertising her own business on the city's website, in violation of RCW 42.23.070(1).

But the charges are also legally and factually insufficient. RCW 29A.56.110; *Inslee*, 200 Wn.2d at 818 (quoting *In re Recall of Boldt*, 187 Wn.2d 542, 548, 386 P.3d 1104 (2017)). The budget allegation is legally insufficient because the statute cited to support that claim does not actually require the mayor to provide a budget.

2

The special privileges allegation is both factually and legally insufficient because the recall proponents fail to show that Ruelas intended to violate the law or that she secured special privileges or excluded others from obtaining the same benefit on the same terms.

Balancing our constitutionally—and legislatively—imposed duties to review recall petitions on the merits and act as a gatekeeper of such recall petitions, on the one hand, against our duty to decide recall cases quickly, on the other—I conclude that in this case, where the elected official caused a delay of several weeks, our duty to decide should prevail. I would therefore deny the recall proponents' motion to dismiss, address the sufficiency of the recall petition, and conclude that it is plainly insufficient on all counts.

I therefore respectfully dissent.

FACTS AND PROCEDURAL HISTORY

The majority gives a short preview of the facts of this case. The full facts below show why the petition is insufficient.

Ruelas is the mayor of the city of Mabton in Yakima County. Clerk's Papers (CP) at 4. In June 2024, four of the five Mabton city council members[1] filed a

---

[1] Recall proponents Mabton city council members Sophia Sotelo, Mary Alvarado, Vera Zavala, and Arturo De La Fuente.

statement of charges with the Yakima County auditor to recall Ruelas from office. *Id.* These recall proponents brought multiple charges against Ruelas, including (1) that Ruelas "continues to refuse to provide a final budget for council's review and passage via city ordinance, as required by state law, RCW 35A.33.075," and (2) that Ruelas "uses the City of Mabton website to promote her personal business, Forever Bridal and Decorating . . . [which] is a direct conflict of interest as a public official promoting her personal business to drum up sales, and a violation of Chapter 42.23 RCW." *Id.* at 7-8.

The Yakima County prosecutor filed the petition in Yakima County Superior Court and attached a proposed ballot synopsis for each of the charges (as required by RCW 29A.56.130). *Id.* at 3-6.[2]

The superior court held a hearing on the sufficiency of the petition and dismissed several charges as factually and legally insufficient. *Id.* at 35.[3] But that

---

[2] The prosecutor narrowed the recall proponents' general conflict of interest charge in violation of chapter 42.23 RCW to an alleged violation of RCW 42.23.070(1). *Compare* CP at 6 (prosecutor's ballot synopsis of recall charges), *with* CP at 8 (statement of charges).

[3] RCW 29A.56.140 states, "Within 15 days after receiving the petition, the superior court shall have conducted a hearing on and shall have determined . . . (1) whether or not the acts stated in the charge satisfy the criteria for which a recall petition may be filed, and (2) the adequacy of the ballot synopsis. . . . The court shall not consider the truth of the charges, but only their sufficiency."

4

court upheld the two charges quoted above as factually and legally sufficient and

amended those recall charges to say:

> (1) The Mayor of Mabton violated her statutory duty to adopt a final 2024 Mabton City budget and transmit a copy to the state auditor and the association of Washington cities, pursuant to RCW 35A.33.075;
>
> (2) The Mayor of Mabton used her position as Mayor to secure special privileges for herself in violation of RCW 42.23.070(1) by advertising her personal business on the official Mabton City website, in a photograph of the Winner of the September Home Beautification Award.

*Id.*[4] The ballot synopsis, amended and approved by the superior court, was

attached to its order. *Id.* at 37.

Ruelas filed a notice of appeal to this court on August 14, 2024. The recall

proponents (respondents in this court) filed a motion to accelerate review on

September 26, 2024, which this court granted. The recall proponents filed their

response brief on time, on Oct. 28, 2024, even though appellant Ruelas had not

filed her opening brief by her deadline and still had not filed it by the time the

recall proponents complied with their later deadline to file their brief.

---

[4] "The superior court shall correct any ballot synopsis it deems inadequate." RCW 29A.56.140.

On October 23, 2024, the recall proponents filed a motion to dismiss for failure to prosecute that relied on the equitable theory of laches. Finally, on November 7, 2024—two weeks after her filing deadline—appellant Ruelas requested a two-week extension of time. We granted a one-week extension.

Ruelas filed her opening brief on November 15, 2024.[5] She primarily reiterated her arguments that the allegations were legally and factually insufficient. The recall proponents filed a supplemental response after Ruelas filed her brief, maintaining their position that the charges were sufficient. Ruelas filed a reply.

### ANALYSIS

I.      We Should Deny the Recall Proponents' Motion To Dismiss

The recall proponents base their motion to dismiss on the equitable doctrine of laches.

Under the doctrine of laches, a court may dismiss a case when a delay by one party results in damage to the other party. *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 848, 991 P.2d 1161 (2000) (citing *Vance v. City of Seattle*, 18 Wn. App. 418, 421 n.2, 569 P.2d 1194 (1977)). As an equitable

---

[5] She also argued for the first time that the recall proponents were not qualified to file a recall petition under RCW 29A.56.110 and that they violated the Open Public Meetings Act, chapter 42.30 RCW, by filing as the "majority" of the Mabton city council without a public vote. I do not address these arguments because they are improperly raised for the first time on appeal. *See* RAP 2.5(a).

defense, the "purpose of laches is to prevent injustice and hardship," essentially, prejudice. *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375, 680 P.2d 453 (1984) (citing *Crodle v. Dodge*, 99 Wash. 121, 168 P. 986 (1917); *Johnson v. Schultz*, 137 Wash. 584, 243 P. 644 (1926)). For laches to apply, the moving party must show "(1) inexcusable delay and (2) prejudice to the other party from such delay." *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 241, 88 P.3d 375 (2004) (citing *Wilkinson*, 139 Wn.2d at 848). The "main component . . . is prejudice to the other party." *Id.* (citing *Wilkinson*, 139 Wn.2d at 848-49).

Here, the recall proponents show no prejudice resulting from Ruelas's delayed filings. This court received all responsive briefing before the court sat en banc to decide this case, even after granting the recall proponents' motion to accelerate review. I acknowledge that time has passed. But the recall proponents fail to prove prejudice. And, as stated, we have a duty to decide recall cases on the merits.

I would therefore deny the motion to dismiss and proceed to the merits.

II.     Background on Recall Petitions and Standard of Review

"All elected public officials in Washington State, except for judges, are subject to recall for malfeasance, misfeasance, or violation of their oath of office." *In re Recall of Sawant*, 197 Wn.2d 420, 425, 483 P.3d 752 (2021) (citing WASH.

CONST. art. I, §§ 33-34; RCW 29A.56.110). "[A]ny legal voter of the state or of

any political subdivision thereof, either individually or on behalf of an

organization" can file a recall petition against an elected official alleging

malfeasance, misfeasance or violation of their oath of office. RCW 29A.56.110.

The legislature defines misfeasance, malfeasance, and violation of the oath

of office as follows:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

After a petition is filed, the superior court determines the factual and legal

sufficiency of its charges and "correct[s] any ballot synopsis it deems inadequate."

RCW 29A.56.140.

A party can seek review of the superior court's decision, but the "reviewing

court's role in a recall petition is limited." *Sawant*, 197 Wn.2d at 425. The superior

court's decisions on the content of the ballot synopses are "final" and cannot be challenged on appellate review. RCW 29A.56.140; *Sawant*, 197 Wn.2d at 424-25.

Further, this court "does not evaluate the truthfulness of the charges; rather, it verifies that the charges are factually and legally sufficient on the face of the petition before the charges reach the electorate." *Sawant*, 197 Wn.2d at 425 (citing *Boldt*, 187 Wn.2d at 548). This means that we "'accept the [petition's] allegations as true and determine whether the charges on their face support the conclusion that the officer abused his or her position.'" *Id.* at 426 (quoting *In re Recall of Inslee*, 194 Wn.2d 563, 568, 451 P.3d 305 (2019)). We review the legal and factual sufficiency of the petition's charges de novo. *Teaford v. Howard*, 104 Wn.2d 580, 590, 707 P.2d 1327 (1985).

To be "legally sufficient," a petition charge must "define substantial conduct clearly amounting to misfeasance, malfeasance or a violation of the oath of office." *In re Recall of Wasson*, 149 Wn.2d 787, 791, 72 P.3d 170 (2003) (citing *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997)). In other words, a charge is legally sufficient if, "accepting the [petition's] allegations as true, the charge on its face supports the conclusion that the official committed misfeasance, malfeasance, or a violation of the oath of office." *In re Recall of Wade*, 115 Wn.2d 544, 548, 799 P.2d 1179 (1990) (citing *Teaford*, 104 Wn.2d at 586). The charge

must also "identify a standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *In re Recall of Ackerson*, 143 Wn.2d 366, 377, 20 P.3d 930 (2001) (citing *In re Recall of Zufelt*, 112 Wn.2d 906, 914, 774 P.2d 1223 (1989)).

"To be factually sufficient, a petition must state in detail the acts complained of, and the petitioners must have knowledge of identifiable facts which support the charges." *In re Recall of Anderson*, 131 Wn.2d 92, 95, 929 P.2d 410 (1997) (citing former RCW 29.82.010 (1984); *Wade*, 115 Wn.2d at 549). The charges must state the alleged acts "in concise language[ and] give a detailed description including the approximate date, location, and nature of each act." RCW 29A.56.110. Further, when a charge states that an official violated the law, the petitioner must show "that the official intended to commit the act" and "that the official intended to act unlawfully." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 263, 961 P.2d 343 (1998).

III.    The Budget Adoption Charge Is Legally Insufficient

As stated in the superior court's amended ballot synopsis, the recall proponents first allege that Mayor Ruelas "continues to refuse to provide a final budget for council's review and passage via city ordinance, as required by state law, RCW 35A.33.075 Budget Adoption." CP at 7-8.

10

This charge is legally insufficient because the recall proponents do not "identify a standard, law, or rule" that would make Ruelas's conduct "wrongful, improper, or unlawful." *Ackerson*, 143 Wn.2d at 377 (citing *Zufelt*, 112 Wn.2d at 914). The recall proponents do cite a statute, but it does not say what they imply it says.

Actually, for cities that rely on Washington's statutory budget procedure, the city clerk must submit to the "chief administrative officer"—here, the mayor—a "proposed preliminary budget." RCW 35A.33.010(1), .050. The mayor must then "prepare the preliminary budget in detail" and "file it with the city clerk as the recommendation of the chief administrative officer for the final budget." RCW 35A.33.052. Once filed, the city clerk must publish a budget hearing notice. RCW 35A.33.060. After that hearing, the city's legislative body—here, the Mabton city council—adjusts the preliminary budget "and shall by ordinance, adopt the budget in its final form and content." RCW 35A.33.075. "A complete copy of the final budget as adopted shall be transmitted to the state auditor, and to the association of Washington cities." *Id.*

The ballot synopsis, however, alleges only that Ruelas violated RCW 35A.33.075. That statute requires the city council to review and pass the final budget once the mayor presents it. In other words, it imposes a duty on *the city*

11

*council*—not on the mayor. As Ruelas correctly notes, the recall petition and the ballot synopsis never cite RCW 35A.33.052, the statute that imposes a duty on the mayor herself—the duty to prepare a "preliminary budget in detail."

Thus, even taking the recall petition allegations as true, this first charge does not on its face "identify a standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful." *Ackerson*, 143 Wn.2d at 377 (citing *Zufelt*, 112 Wn.2d at 914).

I would hold that this charge is legally insufficient.

IV.    The Special Privileges Charge Is Factually and Legally Insufficient

As stated in the superior court's order, the second charge alleges, "The Mayor of Mabton used her position as Mayor to secure special privileges for herself, in violation of RCW 42.23.070(1), by advertising her personal business on the official Mabton City website, in a photograph of the Winner of the September Home Beautification Award." CP at 35.

This allegation is both legally and factually insufficient.

A. This special privileges allegation is legally insufficient

The cited statute, RCW 42.23.070(1), provides, "No municipal officer may use his or her position to secure special privileges or exemptions for himself, herself, or others." An elected official secures a "special privilege" for another in

violation of .070(1) if that official violates a law to confer a benefit on another party. *Hubbard v. Spokane County*, 146 Wn.2d 699, 716, 50 P.3d 602 (2002) (holding that mayor who violated zoning code to grant party a construction permit conferred "a special privilege because the favored party could not have received the benefit of the decision without a violation of the law"), *overruled in part on other grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268, 277-78, 358 P.3d 1139 (2015).[6]

An elected official might certainly violate other laws, mandates, or ethical standards by securing a privilege for herself in other objectionable ways—for example, by using her position to obtain a benefit that is harder for others to obtain. *See In re Recall of Burnham*, 194 Wn.2d 68, 81, 448 P.3d 747 (2019) (rejecting recall petition alleging .070(1) violation where mayor parked his business's vehicles on publicly owned lots but did not exclude the public from using same lots).

But that is not what the recall petition, as construed by the superior court, alleges; it alleges that Ruelas secured a special privilege for herself solely by

---

[6] *See also In re Recall of Feetham*, 149 Wn.2d 860, 72 P.3d 741 (2003) (holding that mayor violated .070(1) by violating building codes to issue occupancy permit to private business).

violating RCW 42.23.070(1). As stated, that statute bars municipal officers from securing "special privileges" for themselves or others.

That claim is legally insufficient because the recall proponents fail to establish that Ruelas secured "special privileges" for herself. They rely on a screenshot of the front page of the city's website featuring a large (undated) photo of two people standing outside a house with a small lawn sign reading, "Neighborhood Home of the Month Sponsored by Forever Bridal and Decorating and the City of Mabton." CP at 21. This does not show that the mayor used her position to secure "special privileges" for herself that were unavailable on the same terms to the rest of the public or that she violated the law to confer any privilege on herself. *Burnham*, 194 Wn.2d at 81; *Hubbard*, 146 Wn.2d at 716. Specifically, the recall petition fails to allege that other businesses who wished to sponsor the city's event, and/or to have their business name appear in the photo, could not have done so as well. Further, the city itself cosponsored the home-of-the-month event; that makes it seem reasonable for the photo to appear on the city website. In other words, the petition never alleges that Ruelas denied this benefit, on equal terms, to other businesses.

14

B.  This special privileges allegation is factually insufficient

Because the recall proponents allege Ruelas violated the law, they must also

"have knowledge of facts which indicate an intent to commit an unlawful act."

*Wade*, 115 Wn.2d at 549. But the recall proponents in this case fail to make that

showing. The few facts alleged are insufficient to support the inference that Ruelas

"knew what [she] was doing was unlawful," and mere "[c]onjecture is insufficient

to support this charge. *Inslee*, 194 Wn.2d at 575 (citing *In re Recall of DeBruyn,*

112 Wn.2d 924, 930, 774 P.2d 1196 (1989)). The recall proponents also fail to

identify any specific (or even approximate) dates on which Ruelas allegedly posted

business events on the calendar—another reason to find that charge factually

insufficient. RCW 29A.56.110 (requiring charge to state "approximate date,

location, and nature of each act complained of").

I would hold that this charge is legally and factually insufficient.

CONCLUSION

Recall cases should be resolved quickly. But they should also be resolved on

their merits when we have the ability to do so in order to implement our

legislatively imposed duty to act as gatekeepers of recall petitions and to protect

the voting public by doing so. In this case, the recall petition's target unjustifiably

delayed our consideration of this case. But she did not unduly prejudice the recall

15

proponents or the voting public by doing so. And we now have everything we need to address this case on the merits. My read of the relevant legislation tells me that we should do so.

I would therefore review the case on the merits and reverse the trial court's decision that these charges are legally and factually sufficient. For that reason, I respectfully dissent.

_____
Gordon McCloud, J.

_____
Stephens, C.J.

_____
Yu, J.

16