**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 14, 2021

_González C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Recall of | ) | |
| | ) | No. 98683-5 |
| | ) | |
| | ) | |
| | ) | |
| Adam Fortney, | ) | En Banc |
| Snohomish County Sheriff | ) | |
| | ) | |
| Appellant | ) | |
| _____ | ) | Filed: January 14, 2021 |

YU, J.—This case involves a recall petition against Snohomish County Sheriff Adam Fortney. Sheriff Fortney challenges the trial court's finding that four of five recall charges filed against him are factually and legally sufficient. On September 10, 2020, we issued an order affirming the trial court in part and reversing in part. We now explain that order.

*In re Recall of Adam Fortney*, No. 98683-5

BACKGROUND

Snohomish County voters elected Adam Fortney as sheriff in November 2019, and he assumed office in January 2020.

Fortney's first four months in office were beset by multiple controversies. In January 2020, Fortney rehired three deputies who had been terminated by the former sheriff for serious misconduct. In March 2020, Fortney wrote a Facebook post to justify a deputy's use of physical force on a woman after a jaywalking incident. Then in April 2020, Fortney publicly accused Governor Jay Inslee of mishandling the COVID-19 crisis and stated that he would refuse to enforce the governor's "Stay Home – Stay Healthy" proclamation.

In May 2020, four voters responded to Fortney's actions by filing multiple recall charges against him, initiating Washington's recall process pursuant to RCW 29A.56.110-.270. The petitioners alleged five claims: (1) Fortney refused to enforce the governor's Stay Home – Stay Healthy proclamation, (2) Fortney incited members of the public to violate the Stay Home – Stay Healthy proclamation, (3) Fortney mismanaged the Snohomish County Jail by failing to institute adequate policies and safety measures, (4) Fortney rehired three deputies previously discharged for misconduct, and (5) Fortney failed to investigate a

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

deputy sheriff who tackled and injured a black female for jaywalking. 3 Clerk's Papers (CP) at 452-470.

After a hearing at the superior court, the trial court found four of the recall charges were factually and legally sufficient. The court rejected the charge related to the Snohomish County Jail, concluding that the petitioners had not met their burden to allege specific facts and legal standards to show Fortney violated his duties. 1 Verbatim Report of Proceedings (June 2, 2020) (VRP) at 91. The following four recall charges were allowed to proceed:

1. Adam Fortney endangered the peace and safety of the community and violated his statutory duties under RCW 36.28.010 and/or 36.28.011 and/or oath of office by declaring that he has not and will not enforce Governor Inslee's "Stay Home – Stay Healthy" proclamation;

2. Adam Fortney endangered the peace and safety of the community and violated his statutory duties under RCW 36.28.010 and/or 36.28.011 and/or oath of office by inciting the public to violate Governor Inslee's "Stay Home – Stay Healthy" proclamation;

3. Adam Fortney endangered the peace and safety of the community, violated his statutory duties under RCW 36.28.010, and exercised discretion in a manifestly unreasonable manner by rehiring three deputy sheriffs previously discharged following investigation and findings of misconduct; and

4. Adam Fortney violated his statutory duties under RCW 36.28.011 and/or 36.28.020 and exercised discretion in a manifestly unreasonable manner by making a public statement on March 27, 2020 that absolved a deputy sheriff of asserted wrongdoing for tackling a black woman related to a jaywalking incident without ensuring a proper investigation.

1 CP at 14.

3

*In re Recall of Adam Fortney*, No. 98683-5

On appeal, Fortney does not challenge the sufficiency of the first charge and agrees to stand for recall on his refusal to enforce the Stay Home – Stay Healthy proclamation. The petitioners do not cross appeal the trial court's rejection of Fortney's handling of the Snohomish County Jail. Thus, we focus our review on recall charges two, three, and four.

ANALYSIS

Washington voters have a constitutional right to recall nonjudicial elected officials who commit acts of malfeasance or misfeasance or violate an oath of office. WASH. CONST. art. I, § 33; RCW 29A.56.110. For the purposes of recall:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
>
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
>
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
>
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110.

The court's role is solely that of gatekeeper in reviewing recall petitions. *In re Recall of Riddle*, 189 Wn.2d 565, 570, 403 P.3d 849 (2017). As such, we do not review the truth of recall charges. *In re Recall of Wasson,* 149 Wn.2d 787, 792, 72

4

P.3d 170 (2003). It is the voters who must act as fact finders. *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005). Our judicial gatekeeping function ensures public officials are not subject to "frivolous or unsubstantiated charges." *In re Recall of Kelley*, 185 Wn.2d 158, 163, 369 P.3d 494 (2016). We therefore review petitions simply to determine if they are "legally and factually sufficient." *In re Recall of Boldt*, 187 Wn.2d 542, 548, 386 P.3d 1104 (2017).

A recall petition is factually sufficient if the facts establish a case of misfeasance, malfeasance, or violation of the oath of office. *Wasson*, 149 Wn.2d at 791 (citing *Cole v. Webster*, 103 Wn.2d 280, 285, 692 P.2d 799 (1984)). A petition is legally sufficient if it "'state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *West*, 155 Wn.2d at 677 (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)). A petitioner bears the burden of identifying the "'standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'" *In re Recall of Inslee*, 194 Wn.2d 563, 568, 451 P.3d 305 (2019) (internal quotation marks omitted) (quoting *In re Recall of Pepper*, 189 Wn.2d 546, 554-55, 403 P.3d 839 (2017)).

We review the sufficiency of a recall petition de novo. *Boldt*, 187 Wn.2d at 549.

*In re Recall of Adam Fortney*, No. 98683-5

I.   CHARGE TWO: The "Incitement Charge"

Charge Two alleges that Fortney incited members of the public to violate the governor's Stay Home – Stay Healthy proclamation.  We affirm the trial court's ruling that this charge is legally and factually sufficient.

A. Background

On February 29, 2020, Governor Jay Inslee issued a statewide, emergency Stay Home – Stay Healthy proclamation to prevent the spread of COVID-19.  The statewide proclamation temporarily closed nonessential businesses and prohibited nonessential travel and activities.

On March 23, 2020, Fortney responded to the Stay Home – Stay Healthy proclamation, utilizing the official Snohomish County Sheriff's Office Facebook page.  He stated in part, "As your elected sheriff, I have no intention of carrying out enforcement for a stay-at-home directive."  2 CP at 390-91.  On April 21, 2020, Fortney posted a lengthier statement.  In that post, Fortney acknowledged the seriousness of COVID-19 but criticized Governor Inslee's response as unconstitutional:

Snohomish County Residents and Business Owners,

. . . .

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

. . . I can no longer stay silent as I'm not even sure [Governor Inslee] knows what he is doing or knows what struggles Washingtonian's [sic] face right now.

. . . .

As elected leaders I think we should be questioning the Governor when it makes sense to do so. Are pot shops really essential or did he allow them to stay in business because of the government taxes received from them? That seems like a reasonable question. If pot shops are essential, then why aren't gun shops essential? . . .

. . . .

If this Coronavirus is so lethal and we have shut down our roaring economy to save lives, then it should be all or nothing. . . . [The Governor] is not prepared or ready to make these decisions. If we are going to allow government contractors and pot shops to continue to make a living for their families, then it is time to open up this freedom for other small business owners who are comfortable operating in the current climate. This is the great thing about freedom. If you are worried about getting sick you have the freedom to choose to stay home. If you need to make a living for your family and are comfortable doing so, you should have the freedom to do so.

As I have previously stated, I have not carried out any enforcement for the current…stay-at-home order. . . .  I have received a lot of outreach from concerned members of our community asking if Governor Inslee's order is a violation of our constitutional rights.

As your Snohomish County Sheriff, yes I believe that preventing business owners to operate their businesses and provide for their families intrudes on our right to life, liberty and the pursuit of happiness.…

As your elected Sheriff I will always put your constitutional rights above politics or popular opinion. We have the right to peaceably assemble. We have the right to keep and bear arms. We have the right to attend church service of any denomination. The impacts of COVID 19 no longer warrant the suspension of our constitutional rights.

*In re Recall of Adam Fortney*, No. 98683-5

> Along with other elected Sheriffs around our state, the Snohomish County Sheriff's Office will not be enforcing an order preventing religious freedoms or constitutional rights. I strongly encourage each of you to reach out and contact your councilmembers, local leaders and state representatives to demand we allow businesses to begin reopening and allow our residents, all of them, to return to work if they choose to do so.
>
> . . . This is not a time to blindly follow, this is a time to lead the way.

*Id.* at 393-96.

Fortney's comments inspired a 79-year-old man to immediately reopen his Snohomish County barbershop in violation of the Stay Home – Stay Healthy proclamation, resulting in several community members lining up for haircuts without wearing masks or social distancing. *Id*. at 352; 3 CP at 482.

### B. Legal and Factual Sufficiency

Fortney argues that the incitement charge is legally and factually insufficient because his refusal to enforce the law does not constitute inciting others to violate the law. Appellant's Opening Br. at 36. Fortney underestimates both the significance of his words and the power of his office.

Fortney unambiguously proclaimed that the Stay Home – Stay Healthy proclamation was unconstitutional and that the governor's judgment should be questioned, and he advocated that residents had the right to work. Fortney specifically directed his message to Snohomish "business owners," declaring that

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"it is time to open up this freedom [to work]" for "small business owners," and it was "time to lead the way." 2 CP at 395-96.

Fortney insists that he encouraged individuals only to contact their representatives. Appellant's Opening Br. at 36. However, the record indicates he said much more, and Fortney's words can be reasonably interpreted as an exhortation for people to return to work. Moreover, petitioners provided evidence that Fortney's words had such an effect on a small business owner who opened the doors of his barbershop to a line of unmasked customers. We agree with the trial court's determination that a voter could reasonably conclude that Fortney's specific words "incit[ed] folks to violate the stay-at-home order." 1 VRP at 85.

In combination with Fortney's statements, Fortney's express refusal to enforce the law could be interpreted as a catalyst for action. As the sitting sheriff, Fortney is the chief executive officer and conservator of the peace of Snohomish County. RCW 36.28.010. He is statutorily obligated to "defend the county against those who…endanger the public peace or safety" and "make complaint of all violations of the criminal law." RCW 36.28.010(2), .011. Therefore, when Fortney, in his official capacity as "your Snohomish County Sheriff," stated— repeatedly and publicly—that he would not enforce Governor Inslee's proclamation and that it infringed on the right to work, he effectively nullified the law. Though Sheriff Fortney is entitled to a great deal of discretion in his

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

enforcement decisions, he is still subject to recall if he uses his discretion in a "manifestly unreasonable manner." *In re Recall of Sun*, 177 Wn.2d 251, 260, 299 P.3d 651 (2013). If Fortney leveraged his discretionary power to refuse to enforce the governor's proclamation with the objective of inciting noncompliance in the midst of a pandemic, the voters may determine that this was a manifestly unreasonable use of discretion.

The dissent states that Fortney's public comments "did not amount to incitement to violate the law or nullification of the law" but were mere "announcements" of his enforcement decisions. Dissent at 7. That reasonable minds may disagree about the *interpretation* of Fortney's words is precisely why this charge should proceed to the voters. This court's gatekeeping is simply to ensure public officials are not subject to "frivolous or unsubstantiated charges," *Kelley*, 185 Wn.2d at 163, not to actually assess the truth of those charges. *Wasson,* 149 Wn.2d at 792. We defer to the voters to draw reasonable inferences from all the facts. *See Boldt*, 187 Wn.2d at 549 ("'Voters may draw reasonable inferences from the facts; the fact that conclusions have been drawn by the petitioner is not fatal to the sufficiency of the allegations.'" (quoting *West*, 155 Wn.2d at 665)). Here, the voters may infer that Fortney's public statements, *combined* with his refusal to enforce the Stay Home – Stay Healthy proclamation, were intended to telegraph more than just an "announcement of his discretionary

*In re Recall of Adam Fortney*, No. 98683-5

decisions." Dissent at 7. Voters may reasonably conclude that Fortney abused his

discretion by inciting Snohomish County residents to violate the law.

Fortney also argues the incitement charge should be reversed because he did

not *intend* for people to violate the law. Appellant's Opening Br. at 38. He

contends that the term "incitement" refers to the accomplice liability statute,

requiring the petitioners to prove Fortney had "knowledge" others would commit a

crime. *Id.* at 37; RCW 9A.08.020. We disagree. The petitioners do not accuse

Fortney of engaging in criminal conduct pursuant RCW 9A.08.020. As they

indicate in their briefing, they merely use "incite" according to its plain, ordinary

meaning to "move" people to action. Br. of Resp't at 24. The petitioners accuse

Fortney of violating his statutory duties rather than of committing any legal crime,

and thus, they were not required to demonstrate intent. *See In re Recall of Bolt*,

177 Wn.2d 168, 174, 298 P.3d 710 (2013) (requiring petitioner to show intent to

commit an unlawful act where charging an official with a violation of the law).

Fortney next contends that the refusal to enforce charge is duplicative to the

incitement charge and that he cannot be subjected to two recall charges for the

same conduct. Fortney is incorrect. This court has previously affirmed multiple

recall charges arising from the same conduct, even in instances where recall

charges were "not materially different." *Riddle*, 189 Wn.2d at 577. In *Riddle*, we

affirmed a trial court ruling that a clerk could stand recall on two separate counts

11

for her failure to use a court processing system: one count for failure to timely

transmit child support orders and one count for failure to timely transmit

restraining orders. *Id.* at 572-77. Although the allegations against Fortney in

charge one and charge two rely on the same set of public statements, they are

sufficient to stand as separate recall charges.

Finally, we wish to briefly address Fortney's claim that the incitement

charges "effectively prevent [him] from expressing any disagreement or criticism

of the way the law has been applied." Appellant's Opening Br. at 36-37.[1]

Fortney has not simply expressed "disagreement or criticism" of the law,

which he is entitled to do as a matter of free speech. Rather, he stands accused of

using a professional Facebook account and the official page of the Snohomish

County Sheriff's Office to leverage his enforcement authority as "your elected

Sheriff" to effectively nullify a state law. Fortney does not have the authority as

Snohomish County sheriff to determine the constitutionality of laws. That is the

role of the courts. WASH. CONST. art. IV, § 1; *Colvin v. Inslee*, 195 Wn.2d 879,

892, 467 P.3d 953 (2020). Washington law explicitly forbids a sheriff from

practicing law. RCW 36.28.110. While Fortney may be entitled to his private

_____

[1] It is important to note that Fortney has not responded to the recall petitions with a First Amendment defense. U.S. CONST. amend. I. This court has already struck down a First Amendment defense to recall petitions. *Riddle*, 189 Wn.2d 565. The right to free speech is a protection from the government rather than individuals, so "voters unquestionably have a right to base their decisions on what a public official says, the First Amendment notwithstanding." *Id.* at 584.

*In re Recall of Adam Fortney*, No. 98683-5

opinions as a citizen, he is not protected from the scrutiny of the voters when he

uses the power of his office to effectuate his own legal conclusions.[2]

The petitioners have provided sufficient allegations to permit the voters to

decide if Fortney incited the public to violate the governor's Stay Home – Stay

Healthy proclamation.

II.    CHARGE THREE: The "Rehiring Charge"

Charge Three alleges that Fortney exercised his discretion in a manifestly

unreasonable way by rehiring three deputies previously terminated for misconduct.

We affirm the trial court's ruling that this charge is legally and factually sufficient.

A. Background

Upon taking office, Fortney quickly reinstated deputies Art Wallin, Matthew

Boice, and Evan Twedt who had been discharged by Fortney's predecessor, Sheriff

Ty Trenary.  We briefly explain those terminations.

Wallin was terminated in October 2019, after years of repeated reprimands.

In April 2016, Wallin was reprimanded for the unauthorized use of dangerous

maneuvers during car chases.  In July 2018, he was reprimanded for failure to

---

[2] This court recently addressed a recall charge where a sitting city councilman used social media accounts to criticize the State's COVID-19 response.  We concluded that a charge alleging the councilman encouraged citizens to disobey the law was insufficient in part because legislators, unlike those in the executive branch, do not have a duty to enforce public health orders. *In re Recall of White*, 196 Wn.2d 492, 502-03, 474 P.3d 1032 (2020).

timely file police reports and book evidence. In December 2018, he was reprimanded for improperly deploying a police dog. In February 2019, Wallin was reprimanded for negligence and endangerment of others during a police stop when he unintentionally drove over the hand of a woman, causing her multiple fractures. All four reprimand letters advised Wallin that any further policy violations might result in "discipline up to and including termination." 1 CP at 200; 2 CP at 201, 203, 209.

In October 2018, Wallin was involved in the death of a 24-year-old man. After Wallin stopped a speeding and erratic driver using unauthorized maneuvers,[3] he "heard what he believed was the sound of the truck being restarted, and observed what appeared to be [the driver] manipulating the gear shift." 2 CP at 249. Wallin fired two shots, killing the driver. A later search revealed a firearm in the truck console. A newspaper article submitted into the record indicates that Wallin reportedly shot the driver because his "spidey sense" told him the driver was armed.[4] Though the Snohomish County Prosecutor's Office declined to criminally charge him, Sheriff Trenary concluded that Wallin violated department

---

[3] Wallin used the same maneuvers he had been reprimanded for two years earlier.

[4] The same newspaper article stated that Fortney had been Wallin's supervisor and on the scene the night of the pursuit. Fortney was criticized for pulling the driver's passenger out of the truck by her hair. The article also states that Fortney was disciplined by then Sheriff Trenary for Fortney's role in the chase.

*In re Recall of Adam Fortney*, No. 98683-5

policy regarding the chase and deadly use of force. Snohomish County settled a civil rights lawsuit regarding the incident for $1 million.

Sheriff Trenary terminated Boice and Twedt in November 2019, after an investigation revealed that they had conducted an illegal search on the car of a suspect. The officers attempted to cover up their illegal search by impounding the vehicle and filing incomplete police reports. Sheriff Trenary concluded that Boice and Twedt "worked together to conduct an unlawful search of a suspect's vehicle, and purposefully attempted to keep [their] actions hidden from discovery." *Id*. at 299, 311-12. Boice and Twedt were placed on a list of officers with a history of credibility problems that prosecutors are required to report to defense attorneys.[5]

On November 1, 2019, the same day of Boice's and Twedt's terminations, Fortney published a Facebook post accusing Sheriff Trenary of corruption and political motivation in the firing of his "most outspoken advocates." 2 CP at 333-34. He referred to Wallin, Boice, and Twedt as "very good men, honest, with impeccable work records" and called for investigations into the firings. *Id*. at 334.

---

[5] During this disciplinary process, Fortney wrote a memo to his lieutenant claiming that he and many other officers were unaware that inventory searching a trunk violated department policy. He said he had "inventoried a trunk countless times over the last several years" and had watched his patrol crew do the same as sergeant. 2 CP at 336. Fortney complained that training on the new policy was inadequate and that the policy manual contained conflicting instructions on inventorying a vehicle trunk. A bureau chief rebutted each of Fortney's points and showed that the policies were not inconsistent. 1 CP at 185. Boice, Twedt, and Fortney had all been issued and acknowledged receipt of the relevant policies. *Id.* at 185-86; 2 CP at 339-40.

The Snohomish County Deputy Sheriff's Association (SCDSA) filed termination grievances for all three deputies. *Id*. at 240, 250.

Once he became sheriff, Fortney responded to the grievances by writing letters to SCDSA, justifying the deputies' conduct and explaining his decision to rehire them. In Wallin's case, Fortney concluded that Wallin reasonably perceived the speeding driver to be dangerous. As to Boice and Twedt, Fortney concluded that the deputies had not "purposely violated any laws whatsoever" but simply "wrote less complete reports than they should have." *Id*. at 240, 243. On January 28, 2020, Fortney published a Facebook post from his Snohomish County Sheriff Facebook page, encouraging the community to read his decision letters. He continued:

> I would like to ask those in our community that are vocal and disagree with my decision, did you consider, even for a second, that maybe, just maybe, the former Sheriff terminated these employees without cause? I believe the word I used during the campaign was "corrupt". What if that is an accurate statement and these employees never deserved to be terminated in the first place? They were fired in the heat of a very heated political campaign and each one of them were very loud vocal supporters of mine and not the sitting Sheriff at the time. One was even the union president of the Deputy Sheriff's Association that chose to endorse me and not the Sheriff. Did that factor in the former Sheriff's decision? I would say it did.

*Id.* at 342.

*In re Recall of Adam Fortney*, No. 98683-5

B. Legal and factual sufficiency

Fortney contends that the rehiring charge is factually and legally insufficient because he followed applicable protocol and had the discretion to reinstate these officers. However, at issue in this case is not whether Fortney was permitted to reinstate the deputies but whether voters could find Fortney abused his discretion by doing so.

Supervising employees involves a "substantial amount of discretion." *Bolt*, 177 Wn.2d at 175. An elected official cannot be recalled for an appropriate use of his or her discretion granted by law. *In re Recall of Burnham*, 194 Wn.2d 68, 76, 448 P.3d 747 (2019) (quoting *Chandler*, 103 Wn.2d at 274). Though personnel decisions are subject to recall petitions, *Sun*, 177 Wn.2d at 258-61, elected officials will not be recalled simply for making unpopular personnel choices. *Cole,* 103 Wn.2d at 286-87. However, recall charges based on discretionary acts are legally sufficient "if an elected official exercised discretion in a 'manifestly unreasonable' manner." *Burnham*, 194 Wn.2d at 76 (quoting *Greco v. Parsons*, 105 Wn.2d 669, 672, 717 P.2d 1368 (1986)).

Fortney used his discretion as sheriff to reinstate deputies who had been discharged for serious misconduct. Wallin, Boice, and Twedt have personnel records that include incidents of negligence and endangerment, constitutional violations, cover-up schemes, and the use of deadly force. Fortney referred to all

17

*In re Recall of Adam Fortney*, No. 98683-5

three as men as having "impeccable work records." 2 CP at 334. In his very first month as sheriff, Fortney conducted his own review of the former sheriff's termination decisions. He did so despite potential conflicts of interest: having been on the scene the night of Wallin's shooting, having been involved in Boice's and Twedt's termination investigation, and having the "loud vocal support[]" by all three deputies during his election campaign. *Id*. at 342.

Fortney's personnel choices were not merely "unpopular decisions" but potentially harmful liabilities for Snohomish County residents. We agree with the trial court that voters could reasonably conclude that Fortney exercised his discretion in a manifestly unreasonable manner when he reinstated these deputies.

Fortney and amicus make an additional claim that because Fortney did not violate the terms of the collective bargaining agreement, his personnel decisions should be unreviewable by recall petition. Neither Fortney nor amicus provides support for the claim that an official must violate a collective bargaining agreement before he or she is subject to recall. The existence of a collective bargaining agreement does not shield Fortney's acts from recall.[6]

---

[6] The collective bargaining agreement provides that "[t]he Employer shall not discipline any employee unless just cause for such discipline exists." Collective Bargaining Agreement at 28. While the collective bargaining agreement is not in the record, amicus SCDSA cites it and provides a link to an online version: https://www.snohomishcountywa.gov/DocumentCenter/View/66276/Deputy-Sheriffs-Association-CBA?bidId= [https://perma.cc/J2YX-XR32].

18

*In re Recall of Adam Fortney*, No. 98683-5

III.    CHARGE FOUR: The "Failure To Investigate Charge"

Charge Four alleges that Fortney failed to investigate an incident regarding a deputy's use of force.  We reverse the trial court's ruling that this charge is legally and factually sufficient.

A.  Background

On March 21, 2020, a Snohomish County deputy tackled and arrested a black female after a jaywalking incident.  The petitioners allege that on March 26, 2020, an attorney complained to the sheriff's office of misconduct relating to the woman's arrest.  The petitioners did not attach a copy of the attorney's complaint in the record but included only a one-page summary of the arrest that notes charges for "obstruct[ing] law enforcement" and "resisting arrest," and indicates that the woman was in held in custody for over 24 hours.  3 CP at 515.

On March 27, Fortney published a Facebook post stating that according to his review of the evidence, the deputy stopped a jaywalker to discuss the infraction, but she declined to identify herself and ran from the officer, resulting in a chase and tackle.  Fortney stated that he found that deputy's actions were "reasonable."  *Id.* at 469.

The petitioners characterize Fortney's post as absolving the deputy of wrongdoing without sufficient internal process in violation of internal Snohomish

County Sheriff's Office policies about how to deal with a complaint, as well as Fortney's duties under RCW 36.28.010 and .011.

### B. Factual and Legal Sufficiency

Fortney contends that his public statements about the arrest of the jaywalker are factually and legally insufficient to justify recall. We agree with Fortney.

Recall petitioners must show that they know "'identifiable facts'" that support each charge. *Kelley*, 185 Wn.2d at 164 (quoting *In re Recall of Reed*, 156 Wn.2d 53, 58, 124 P.3d 279 (2005)). "[C]harges are factually sufficient only if they enable the voters and the challenged official to make informed decisions." *Id.* (citing *Wasson*, 149 Wn.2d at 791).

Though the petitioners allege Fortney failed to perform his duty to properly investigate a complaint, they have not provided the complaint for review. There is no record that provides the necessary details. Without this information the petitioners have failed to show "identifiable facts" to support their allegations and assess Fortney's actions. Accordingly, we reverse the trial court's decision that this charge is factually sufficient.

IV.  Fortney's Challenge to the Trial Court's Denial of His Motion for Reconsideration

Finally, Fortney contends that the trial court erred by denying his motion for reconsideration. We find that the trial court did not abuse its discretion.

CR 59(a)(4) allows the trial court to vacate an order if a party provides "[n]ewly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial."[7] Fortney argues that the declarations he submitted in support of his motion constitute "newly discovered evidence."[8] The trial court disagreed and denied the motion. We review a trial court's decision on a CR 59 motion for an abuse of discretion. *Pendergrast v. Matichuk*, 186 Wn.2d 556, 569, 379 P.3d 96 (2016).

Fortney does not show that his new declarations contained information that was unknown to Fortney and his staff at the time of trial. Instead, Fortney argues that he had difficulty in filing his materials so quickly. He claims that it would be "unreasonable" not to consider the declarations because of the recall statute's short timeframe.

Fortney is correct that the recall timeline in the trial court is short. RCW 29A.56.140. But that timeline is fundamental to the "interest of the people in an expeditious recall procedure." *Janovich v. Herron*, 91 Wn.2d 767, 777, 592 P.2d 1096 (1979). If the expedited timeframe for recall provides a reason to reopen those cases for additional evidence, there would be no reason to expedite these

---

[7] The parties disputed whether CR 59 even applies to recall proceedings. The parties have not raised this issue before this court.

[8] Fortney's "newly discovered evidence" consisted of four declarations by himself and other sheriff's office staff discussing complaints about the jaywalker's arrest, the office's response to those complaints, and details of the arrest. It also included a memorandum from the prosecutor's office explaining the decision not to prosecute Wallin for murder.

cases.  The trial court did not abuse its discretion by denying Fortney's motion for reconsideration.

 V.  Fortney's Challenge to the Ballot Synopsis

Fortney also challenges the trial court's final ballot synopsis.  He alleges that the trial court erred by "correcting" the synopsis and that by doing so it "fixed" otherwise fatal errors in the rehiring and failure to investigate charges that would have rendered them factually and legally insufficient.  Appellant's Opening Br. at 38.

RCW 29A.56.140 states that a superior court shall correct any ballot synopsis it deems inadequate.  Any decision regarding the ballot synopsis by the superior court is final.  We have held that this statute renders ballot synopsis decisions  "not reviewable by this court." *In re Recall of Zufelt*, 112 Wn.2d 906, 910, 774 P.2d 1223 (1989) (citing *Kreidler v. Eikenberry*, 111 Wn.2d 828, 834, 766 P.2d 438 (1989)).  Although we have previously stated that this court "may, in unusual circumstances, exercise our inherent power of review to determine if the trial court's decision is arbitrary, capricious, or contrary to law," we decline to do so here. *Kreidler*, 111 Wn.2d at 837.

CONCLUSION

We affirm the trial court's ruling that the incitement charge and the rehiring charge are factually and legally sufficient.  These charges, along with the

unchallenged refusal-to-enforce charge, will proceed to the signature gathering

phase.

_____
Yu, J.

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Madsen, J.

_____

_____
Whitener, J.

*In re Recall of Adam Fortney*, No. 98683-5

No. 98683-5

GORDON McCLOUD, J. (concurring in part/dissenting in part)—The

majority holds that an elected sheriff cannot use his or her executive branch office

to "nullify" a law, to enforce his or her own personal opinions about the

constitutionality of a law, or to incite countywide disobedience of a law. Majority

at 8-9, 12. I agree.

But the majority also recognizes that an elected sheriff can express

disagreement with or criticism of a law. *Id.* at 12 (if the sheriff had "simply

expressed 'disagreement or criticism' of the law," that would be something "he is

entitled to do as a matter of free speech"). I agree with this, also. In addition, as I

discuss further below, an elected sheriff possesses discretion about how to enforce

the law and may ordinarily choose education or warnings over arrest or citation.

The difficult question in this case is whether Snohomish County Sheriff

Adam Fortney's statements fell into the first, impermissible, category—which

1

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

would make the petition sufficient to support recall for inciting lawlessness—or

into the second, permissible category—which would not.

I part ways with the majority because I cannot agree that Fortney's public

statements show complete "refusal to enforce the law" or countywide incitement to

violate the law. *Id.* at 8-9. Instead, taken as a whole, his statements show that he

disagrees with the law, that he encourages people to oppose the law—especially by

writing to elected officials—and that he chooses to enforce the law through

education rather than arrest. Finally, and most critically for the "incitement"

charge, Fortney's statements also show that he chose to make that enforcement

decision public and transparent by posting it on social media.

I would therefore reverse the superior court's decision to allow the

incitement charge to move forward.[1] Accordingly, I concur in part and dissent in

part.

FACTS

On March 22, 2020, the Washington Association of Sheriffs and Police

Chiefs (WASPC) sent an "Overall Communications Guidance" document to its

---

[1] I agree that the rehiring recall charge is factually and legally sufficient and that the failure to investigate charge is factually insufficient. I also agree with the majority's decisions regarding Fortney's motion for reconsideration and challenges to the ballot synopsis.

2

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

members to promote a consistent statewide response to the COVID-19 pandemic and Governor Inslee's anticipated "Stay Home – Stay Healthy" proclamation. 2 Clerk's Papers (CP) at 233. The guidance provided recommendations for communicating with the public, resources comparing Washington's situation to that of other states, and samples of public statements from California, which had already issued a "stay-at-home" order. *Id.* at 233-37.

On March 23, Governor Inslee issued the expected proclamation. Fortney immediately posted a social media response to a flood of 911 calls seeking information about the proclamation. Fortney's post largely quoted WASPC's sample public statements. He said that the "the governor is NOT asking law enforcement to enforce a statewide stay-at-home order," that "[a]s your elected sheriff, I have no intention of carrying out enforcement for a stay-at-home directive," that "deputies are not going to be going around neighborhoods to check to see if people are out when they shouldn't be," and that his office "will not make any arrests or take anybody to jail for violations." 3 CP at 474-75.

On the other hand, Fortney also posted a link to a public website for COVID-19 information, stated the goal of the stay-at-home order was "to encourage people to self-regulate their behavior and home isolate, protect themselves and go about only the essential activities, while practicing social

3

distancing and common sense," and that he viewed the sheriff's "role more as one of education: educating people how to keep themselves safe, how to keep their families safe and most importantly, to keep the rest of the community safe, especially our elderly and other vulnerable populations." *Id.*

Fortney then posted an update on April 21 addressed to "Snohomish County Residents and Business Owners." *Id.* at 477. He did not take down his earlier post endorsing education, rather than criminal justice involvement, as his preferred method for addressing public health concerns and conduct mandates. But he excoriated Governor Inslee's response to the pandemic, questioned "if he even has a plan," expressed worry "about the economy" and about "Washingtonian's [sic] that need to make a living for their family," and attacked what he viewed as inconsistencies in the categorization of "essential" businesses (contrasting "pot shops" with "gun shops" and government contractors with private construction workers). *Id.* at 477-80. Fortney advocated an "all or nothing" economic shutdown, instead. *Id.* at 479. He promised, "As your elected Sheriff I will always put your constitutional rights above politics or popular opinion," and he specifically cited the rights "to peaceably assemble," to "keep and bear arms," and to "attend church service of any denomination." Fortney further declared that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

"[t]he impacts of COVID 19 no longer warrant the suspension of our constitutional rights." *Id.* at 480.

Critically, Fortney clarified that "this virus is very real and sadly, it has taken 97 lives in Snohomish County. This is a very serious issue and the appropriate precautions need to be taken to protect our most vulnerable populations." *Id.* at 477. But Fortney believed that "our communities have already shown and continue to show they understand the severity of the situation and are doing all they can already to keep themselves, their families and neighbors safe and healthy." *Id.*

Finally, Fortney stated the following about what he was specifically encouraging others to do:

> Along with other elected Sheriffs around our state, the Snohomish County Sheriff's Office will not be enforcing an order preventing religious freedoms or constitutional rights. *I strongly encourage each of you to reach out and contact your councilmembers, local leaders and state representatives* to demand we allow businesses to begin reopening and allow residents, all of them, to return to work if they choose to do so.
> The great thing about Snohomish County government is we have all worked very well together during this crisis. I'm not saying we agree all of the time, I'm saying we have the talent and ability to get this done for Snohomish County! This is not a time to blindly follow, this is a time to lead the way.

5

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

*Id.* at 480 (emphasis added).  In other words, he was mainly encouraging people to contact their elected officials.

Fortney's social media posts "inspired" a Snohomish County barbershop to reopen in violation of Governor Inslee's proclamation.  2 CP at 352.

ANALYSIS

I agree with the majority that sheriffs are elected to enforce the law.  And elected sheriffs maintain substantial discretion about how to enforce and discuss the law.  In addition, I agree with the majority that elected sheriffs cannot abuse that discretion to the point of nullifying the law and inciting lawlessness.

I disagree, however, with the majority's conclusion that the allegations in this case showed that Fortney's public media posts fell into the unlawful nullification/incitement category rather than into the lawful discretionary enforcement/speech category.

I begin with the uncontroversial premise that elected sheriffs possess a good deal of discretion about how to enforce and talk about the law (Part I).  I then describe the standard that we must apply to such discretionary decisions in a recall case:  we must ask whether the petitioners recited specific facts sufficient to show that the elected official manifestly abused their discretion and, if the answer is no, the recall charge fails (Part II).  I conclude that Fortney's public statements, taken

6

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

as a whole, constituted announcements of his discretionary decisions about how to enforce the law. They did not amount to incitement to violate the law or nullification of the law (Part III).

I.      A SHERIFF HAS DISCRETION ABOUT HOW TO DISCHARGE HIS OR HER DUTY TO ENFORCE THE LAW—ARREST IS NOT REQUIRED IN EVERY SITUATION

As the majority says, Fortney, as the elected sheriff of Snohomish County, is "statutorily obligated to 'defend the county against those who . . . endanger the public peace or safety' and 'make complaint of all violations of the criminal law.'" Majority at 9 (quoting RCW 36.28.010(2), .011).

But a sheriff is not required to arrest and imprison every violator of every law in the county. Sheriffs, as executive branch officials, exercise considerable discretion in carrying out their duties. *See In re Recall of White*, 196 Wn.2d 492, 503 n.4, 474 P.3d 1032 (2020) ("Executive officers do have some measure of constitutionally protected discretion in how they carry out [their] responsibility [to enforce the law]." (citing *State v. Rice*, 174 Wn.2d 884, 889, 279 P.3d 849 (2012); *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 149, 60 P.3d 53 (2002))).

Law enforcement officers in particular have discretion about whether to arrest. *See Donaldson v. City of Seattle*, 65 Wn. App. 661, 670, 831 P.2d 1098

7

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

(1992) ("Generally, where an officer has legal grounds to make an arrest he has considerable discretion to do so.").

In fact, the legislature has explicitly made arrest mandatory for certain specifically enumerated crimes, thereby implying that arrest is not mandatory for other crimes. RCW 10.31.100(2); *see State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9, 375 P.3d 636 (2016) ("'"[w]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions"'" (alteration in original) (quoting *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999) (quoting *Queets Band of Indians v. State*, 102 Wn.2d 1, 5, 682 P.2d 909 (1984)))). It is therefore not surprising that the very same statute that makes arrest mandatory for a small category of crimes also states that discretion about whether to arrest for other crimes remains the rule: RCW 10.31.100 gives law enforcement officers "authority to arrest" for other crimes.

It is certainly true that a blanket refusal to enforce some laws, combined with incitement to disobey those laws, could rise to the level of an abuse of discretion. For example, a social media post that Washington's laws prohibiting murder or robbery are unconstitutional alongside a blanket refusal to enforce those laws would likely provide sufficient basis to recall a sheriff.

8

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)


But law enforcement clearly has discretion (within constitutional limits[2]) to decline to enforce many laws by arrest. For example, before the people of our state legalized cannabis use, some cities took the approach of generally declining to enforce marijuana laws through arrest or charging. *Mayor's Office FAQs on Marijuana Enforcement in Seattle* (Sept. 1, 2010), SEATTLE POLICE DEPARTMENT: SPD BLOTTER, https://spdblotter.seattle.gov/2010/09/01/mayors-office-faqs-on-marijuana-enforcement-in-seattle/ [https://perma.cc/VDX9-W8HX]. That was certainly a discretionary decision. Another example arose this year: some police departments declined to arrest for violation of laws requiring permits for demonstrations. Mike Baker, *Free Food, Free Speech and Free of Police: Inside Seattle's 'Autonomous Zone'* N.Y. TIMES, June 11, 2020, https://www.nytimes.com/2020/06/11/us/seattle-autonomous-zone.html [https://perma.cc/FW5Y-35MT]. That was also a discretionary decision.

The point is that sheriffs are not required to arrest every violator and that a public announcement of a countywide arrest decision does not amount to "incitement" of lawlessness. Instead, the decision about how to enforce is clearly

---

[2] *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) ("[T]he decision to prosecute may not be '"deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."'" (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)))).

9

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

discretionary. Announcing that discretionary enforcement decision to the public

constitutes transparency, not incitement.

II.     WE REVIEW RECALL CHARGES BASED ON AN ELECTED OFFICIAL'S
        DISCRETIONARY DECISIONS FOR MANIFEST ABUSE OF DISCRETION

Elected officials—including those in the executive branch—may certainly

be forced to stand for recall for abusing the discretion due their office. *See, e.g.*, *In*

*re Recall of Sun*, 177 Wn.2d 251, 255, 299 P.3d 651 (2013) ("If recall is sought for

acts falling within the elected official's discretion, the official must have acted with

a manifest abuse of discretion." (citing *In re Recall of Bolt*, 177 Wn.2d 168, 298

P.3d 710 (2013))); majority at 17 ("[R]ecall charges based on discretionary acts are

legally sufficient 'if an elected official exercised discretion in a "manifestly

unreasonable" manner.'" (quoting *In re Recall of Burnham*, 194 Wn.2d 68, 76, 448

P.3d 747 (2019) (quoting *Greco v. Parsons*, 105 Wn.2d 669, 672, 717 P.2d 1368

(1986))))). As the quoted material shows, to meet that standard, a petitioner must

allege sufficient facts to show a "manifest abuse of discretion."

The standard for recall based on discretionary decisions used to be lower.[3]

But not anymore. The constitutional standard that we have embraced for years is

---

[3] For many years, we routinely forwarded recall petitions to the voters for elected officials' poor discretionary decisions. *See, e.g.*, *Morton v. McDonald*, 41 Wn.2d 889, 892-93, 252 P.2d 577 (1953) ("appoint[ing] a water commissioner who was not qualified or able to discharge the duties of that office"); *Bocek v. Bayley*, 81 Wn.2d 831, 837, 505

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

that a recall petition based on a discretionary decision is legally sufficient only if the official exercised that discretion in a manifestly unreasonable manner. *Burnham*, 194 Wn.2d at 76.

Thus, we must test this petition for legal and factual sufficiency—just like we test every other recall petition. *In Recall of Durkan*, No. 98897-8, slip op. at 22 (Wash. 10, 2020), http://www.courts.wa.gov/opinions/pdf/98897-8%20Opinion.pdf. Where, as here, we apply that test to a discretionary decision— the decision to make public statements about refusing to enforce the Stay Home – Stay Healthy proclamation via arrests and about encouraging constituents to tell their representatives that they disagree with that law—we must ask: Did Fortney's announcement of his enforcement decision constitute a manifest abuse of the discretion due his office?

---

P.2d 814 (1973) ("hir[ing] an unqualified school superintendent" and thus "failing to act in the best interests of the school district community"); *State ex rel. Citizens Against Mandatory Bussing v. Brooks*, 80 Wn.2d 121, 129, 492 P.2d 536 (1972) ("employing officials known to be incompetent"). But we took a new approach and articulated a new standard in 1984: "[D]iscretionary acts of a public official are *not* a basis for recall insofar as those acts are an appropriate exercise of discretion by the official in the performance of his or her duties." *Cole v. Webster*, 103 Wn.2d 280, 283, 692 P.2d 799 (1984) (emphasis added) (overruling four cases that applied the old standard, including *Bocek* and *Citizens Against Mandatory Bussing*).

11

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

III.    THE FACTUAL BASIS FOR FORTNEY'S "INCITEMENT" CHARGE IS THAT HE PUBLICIZED HIS DISCRETIONARY REFUSAL TO ENFORCE THROUGH ARREST; PETITIONERS MUST THEREFORE SHOW THAT FORTNEY MANIFESTLY ABUSED HIS DISCRETION IN MAKING AND PUBLICIZING THAT DECISION—THEY FAIL TO DO SO

The recall petition contains two grounds for recall related to failure to enforce. One is the incitement charge—which Fortney appeals and which is currently before this court. The other is the failure-to-enforce charge—on which Fortney has agreed to stand for recall.[4]

I read the charges as basically the same and as equally insufficient to show that the sheriff's language constituted an abuse of his discretion. There are several reasons for this.

First, the petitioners essentially alleged two equivalent bases for recall. The first charge in the petition, which is not before us, asserts that Fortney failed to enforce the governor's proclamation. But the second charge in the petition, which is before us, asserts only that Fortney publicized that very same discretionary decision not to enforce. A review of the petition shows that both charges are based

---

[4] Fortney declined to appeal the superior court's decision on the failure to enforce charge. Appellant's Opening Br. at 2 n.1. I address that charge only to the extent necessary to discuss the incitement charge, which Fortney did appeal.

12

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

on the exact same social media posts, directed at the exact same audience, and supposedly violated the exact same duty.

Second, I read the sheriff's public statements as a whole and in context.

Fortney's social media statements criticized Governor Inslee's response to the COVID-19 pandemic, questioned the categorization of which businesses and projects were "essential," and refused to enforce the Stay Home – Stay Healthy proclamation via arrests. And he announced to the public that he would generally not enforce the proclamation. 3 CP at 474, 479.

But that is not all he said. When considered in context, we must also remember that Fortney never took down or repudiated his position that he believed education and persuasion were the better way to keep people safe. *Id.* at 475. He also clarified what he meant by nonenforcement: "Our deputies are not going to be going around neighborhoods to check to see if people are out when they shouldn't be," they would not "ask for badges, identification, or a letter that certifies" why a person is at the grocery store, and they would "not make any arrests or take anybody to jail for violations." *Id.*

Similarly, Fortney announced his beliefs that the proclamation violated constitutional rights and that people should be free to return to work if they choose.

13

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

And the majority emphasizes that Fortney encouraged Snohomish County residents "to open up this freedom" and "lead the way." Majority at 8.

But Fortney did not say that he meant residents should "lead the way" by returning to ordinary business in violation of the order. *See* 3 CP at 479-80 ("[i]f you need to make a living for your family and are comfortable doing so, you should have the freedom to do so"). He *did* say that he meant residents should "lead the way" by voicing their dissatisfaction to their elected officials. *Id.* ("I strongly encourage each of you to reach out and contact your councilmembers, local leaders and state representatives to demand we allow businesses to begin reopening and allow our residents, all of them, to return to work if they choose to do so.").

And Fortney said more than just "lead the way." In context, he also publicly warned that "this virus is very real and sadly, it has taken 97 lives in Snohomish County." *Id.* at 477. He also publicly stated that the virus "is a very serious issue and the appropriate precautions need to be taken to protect our most vulnerable populations." *Id.*

These comments all followed the March 23 statement that the sheriff's role is "one of education." Fortney wanted people to "to listen to the order and stay home if they don't need to be out." *Id.* at 474-75.

14

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

Taken together, these facts do not show a blanket refusal to enforce or an incitement to violate the law. They show a decision to focus on education and persuasion to comply with the law, while also expressing disagreement with the law, and then making those decisions very public.

When one reads the allegations in context, the first charge alleges that Fortney failed to enforce and the second charge alleges that he publicized and promoted his supposed failure to enforce. The petition does not show that Forney manifestly abused his discretion in a manner that incited disobedience of the law. The second allegation is no more and no less than publication of Fortney's supposed failure to enforce, i.e., the first allegation. I would therefore hold that the incitement recall charge fails.[5]

---

[5] The redundancy of these charges dooms the incitement charge for an additional reason, also. We have held that where a recall petition fails to "provide[] concrete examples [of facts] beyond what is already covered by" a separate, redundant, recall charge, we do not "allow the voters two bites at the same apple." *Sun*, 177 Wn.2d at 261. The majority is correct that in *In re Recall of Riddle*, we allowed two similar recall charges based on two similar failures to act—failures to transmit orders—to proceed to the voters. 189 Wn.2d 565, 572-73, 577, 403 P.3d 849 (2017). But the petition in *Riddle* alleged that more than one type of order languished, that more than one type of court user suffered, and that Riddle violated more than one statutory duty. The failure-to-enforce and incitement charges in this case should be governed by *Sun*, not *Riddle*.

15

*In re Recall of Adam Fortney*, No. 98683-5
(Gordon McCloud, J., concurring in part/dissenting in part)

CONCLUSION

Fortney wields substantial discretion as the chief law enforcement officer of Snohomish County. In his official capacity, he may decline to enforce certain laws and he may announce his official enforcement decisions over social media. Such executive decisions are a classic example of the separation of powers working as intended. Because I do not find that Fortney abused the discretion due his office, I would not subject him to a recall vote for incitement to violate the Stay Home – Stay Healthy proclamation.

_____
Gordon McCloud, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

16